James J. VALENTI, Plaintiff,

v.

John DEMPSEY, Governor of the State of Connecticut, Ella T. Grasso, Secretary of the State of Connecticut, Albert L. Coles, Attorney General of the State of Connecticut, Donald J. Irwin, Treasurer of the State of Connecticut, and Raymond S. Thatcher, Comptroller of the State of Connecticut, Defendants.

Civ. No. 9544.

United States District Court
D. Connecticut.

Dec. 20, 1962.

Alphonse DiBenedetto and Alfred E. DeCapua, New Haven, Conn., for plaintiff.

Albert L. Coles, Atty. Gen. State of Connecticut, Hartford, Conn., for defendants.

Before CLARK, Circuit Judge, and ANDERSON and TIMBERS, District Judges.

CLARK, Circuit Judge.

This is an application for a preliminary injunction in the pending civil action brought by the plaintiff as a citizen and voter of Connecticut to establish his rights to a representation in the Connecticut General Assembly more in accordance with the number of electors voting for the respective Senate and House members in the two chambers of the

Connecticut legislature. The application was heard by a statutory court of three judges, convened pursuant to 28 U.S.C. §§ 2281, 2284.

The plaintiff's voluminous complaint is based upon the now famous case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and alleges that he and other voters in the State are denied the equal protection of the laws accorded them by the Fourteenth Amendment to the Constitution of the United States because of the debasement of their votes resulting from the disproportionate election districts of both the House and the Senate. As to the House, the extensive tables attached as exhibits to the complaint show that plaintiff, as a resident of New Haven, one of the larger cities of the State, shares representation by its two representatives with many more citizens than is the situation of the electors in many of the smaller towns of the State. But as to the Senate, he is a resident of one of the senatorial districts, which, as his complaint freely concedes, is overrepresented according to its population as compared to most other districts in the State and to the average of all the districts.

The present application concerns only representation in the Senate and does not deal with the House at all. The injunction is said to be immediately necessary because of the provision of Art. III, § 5, of the present Connecticut Constitution, C.G.S.A.—being Amendment XXXI of the earlier Constitution—authorizing the first session of the General Assembly after the decennial federal census to redistrict the Senate and providing that if it does not act no redistricting shall be until the first session after the next census. In Cahill v. Leopold, 141 Conn. 1, 103 A.2d 818, the Connecticut Supreme Court of Errors established that the stated limitation is mandatory, so that if the first legislature in session after the census results are available does not act, no action is then possible for ten years and until the results of the next census are available. This is the provision heavily relied on by the plaintiff as showing the need of action before the 1961 Assembly is succeeded by the next biennial session, which was elected in November 1962 and which will convene on January 9, 1963.

█ In deciding the application we must proceed according to familiar principles of equity with respect to temporary injunctions designed essentially to preserve the status quo until adjudication can be had upon the merits. The matter is one for the wise discretion of the court, the usual rule being that a plaintiff is not entitled to this extraordinary and peremptory relief unless he shows that otherwise he would suffer irreparable loss. Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, 2 Cir., 299 F.2d 33, 35; Foundry Services, Inc. v. Beneflux Corp., 2 Cir., 206 F.2d 214, 216; United States v. Adler's Creamery, 2 Cir., 107 F.2d 987, 990. Further, there must be a balancing of interests, so that a plaintiff, before his right has been established at trial, cannot cause loss to opposing interests far exceeding any that he may suffer. Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738, 743.

█ Applying these usual principles we must deny the application for a preliminary injunction. Whether or not a federal court possesses the naked power to order the legislature of a state not to convene as otherwise required by law, it is obvious that this is a power which should not be resorted to except as an extreme measure, for such an order would cause chaos to all the organs of state government and to state institutions dependent on legislative direction and support. On the other hand, there are many practical, as well as legal, reasons why we should not act. The plaintiff's right is not at all clear at this time, for he admittedly cannot show injury by the present districting of the Senate, but actually gains by having greater representation than most of the other citizens of the State. We do not need to say that he has no standing to sue on this issue, for undoubtedly he has standing to press,

in due course, his case concerning the House and we do not wish to force him to try it piecemeal. Further, we realize that it will not be difficult to add a party plaintiff who is adversely affected by the apportionment of Senate districts or to consolidate with this action any subsequently commenced action having a plaintiff adversely affected with respect to the Senate. This situation does suggest, however, the lack of any irreparable injury at this time to the plaintiff.

■■ The point is made the clearer by two further considerations. First, under Baker v. Carr, supra, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, he is pressing a federal constitutional right; and if he is correct in his federal constitutional claim, the state constitutional limitation need not be construed as a bar, for no state limitation on legislative action can prevent relief which the Federal Constitution, as construed by the Supreme Court, requires. And second, as the Connecticut Supreme Court of Errors has noted, rather distinguished efforts to secure a mandatory constitutional provision for reapportionment have so far failed. Under the present Conn. Constitution, Art. III, § 5, the first legislature after each federal census has a choice whether or not it will act. Cahill v. Leopold, supra, 141 Conn. 1, 103 A.2d 818. The political division between the Chief Executive and one or both houses of the Assembly for many years has been such that no steps toward Senate reapportionment were realistically or politically feasible. There is no reason why we should expect different action now in a hurry, and we cannot force such action by the state bodies on the basis of the permissive state provision alone and in advance of a decision of the whole case on the merits showing some federal compulsion.

In thus denying this application we wish to emphasize that we are not deciding, nor do we express any opinion, as to the merits of the action itself. That must await answering pleadings and other steps culminating in a trial on the merits. The underlying questions are of the greatest importance to our state; and we should hope that by the time trial and decision is at hand the court will have had the assistance of the best thought which not only the parties now before us, but other citizens and groups interested, may be able to give. And we trust the court can also count on the co-operation and assistance of the Chief Executive and the General Assembly in reaching for the correct solution. Indeed we are happy that, under the settled principles of law we are following, we need not view the state organs of government as adversaries to be given harsh mandates, but can instead look for their co-operative effort toward solving probably the most difficult governmental problem of our age.

Application denied.