**GLENIS MARTIN, KATHLEEN MARTIN, REGINALD MARTIN and VENETTA FRAZER, Plaintiffs**

v.

**ERIC A. FRETT, PEDRO J. HOSKING and CARIB GAS CORPORATION OF ST. THOMAS, Defendants**

Civil No. 198-1978

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 2, 1980

475

476

■■■■

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for plaintiffs*

JOEL W. MARSH, ESQ., St. Thomas, V.I., *for defendants Pedro J. Hosking and Carib Gas Corporation of St. Thomas*

DAVID V. O'BRIEN, ESQ. (O'BRIEN & MOORE), Christiansted, St. Croix, V.I., *for defendant Eric A. Frett*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

This case, an outgrowth of an automobile accident allegedly caused by the negligent operation of a Carib Gas Corporation's vehicle by Pedro Hosking, an employee of the corporation, is before the Court on several motions of the defendants. Defendant Carib Gas Corporation moves for summary judgment on the claims of plaintiffs Glenis Martin, Kathleen Martin, Reginald Martin and Venetta Frazer, grounded on negligent entrustment and respondeat superior. Fed. R. Civ. P. 56(b). Alternatively, Carib moves for a separate trial on the issue of whether Hosking was acting within the scope of his employment at the time of the mishap. Fed. R. Civ. P. 42(b). Defendant Eric Frett moves to strike the cross-claim of Hosking and Carib for contribution or indemnification and to dismiss their cross-claim for $25,000 in damages. Fed. R. Civ. P. 12(f), 13(a).

*Carib's Motions for Summary Judgment*

In the light most favorable to plaintiffs, the relevant facts are as follows. Defendant Pedro Hosking is a service engineer employed by defendant Carib Gas Corporation. Carib grants Hosking full-time use of a company pickup truck which is marked with Carib's name and telephone number. Hosking is authorized to use the truck for personal as well as work-related functions. Carib pays for all maintenance, insurance, repairs and fuel for the truck.

Hosking is on 24-hour call for providing emergency service. In fact, it is to facilitate Hosking's quick response to emergency calls, that Carib is, to some extent, motivated in furnishing Hosking with round the clock transportation. In addition, Carib pays for Hosking's home telephone and the number is listed in the telephone directory as an emergency number of Carib. Also, when away from home Hosking attempts to provide Carib with a number at which he can

be reached if needed. However, there is no two-way radio in Hosking's truck, so Carib cannot contact him while he is on the road.

On the morning of September 18, 1976, the date of the accident, Hosking stopped by Carib's offices to inquire if there was any work for him to perform. Upon being advised that there was none, Hosking went to the construction site of his new home. Hosking's employer had the telephone number of a person who lived near the construction site so that Hosking could be reached if needed. At approximately 6:15 p.m. while on his way from the construction site to his home, Hosking collided with plaintiffs' and defendant Eric A. Frett's automobiles. All repairs to the Carib truck necessitated by the accident were done by Hosking on behalf of Carib.

(1) *Negligent Entrustment*

█ Carib's motion for summary judgment on the plaintiffs' negligent entrustment claim is easily dispensed with. In his deposition of December 11, 1979, Hosking stated that he suffered from dizzy spells during the year in which the accident occurred. (Pages 5–8.) Hosking also states that he had informed Carib of this problem at that time. Id. Accordingly, a prima facie case of negligent entrustment has been made out by plaintiffs.

(2) *Respondeat Superior*

As to Carib's summary judgment motion on plaintiffs' respondeat superior claim, the key issue is whether or not a reasonable jury could conclude that Hosking was acting within the scope of his employment at the time of the accident. The RESTATEMENT (SECOND) OF AGENCY § 228 (1973) defines scope of employment as follows:

§ 228. General Statement

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the

authorized time or space limits, or too little actuated by a purpose to serve the master.

Carib has submitted affidavits by Hosking and Marion Heffron, credit manager of Carib, which unequivocally state that at the time of the accident Hosking was not on a customer service call nor engaged in any business activity at the request or direction of Carib. Plaintiffs have not filed any affidavits contradicting this assertion nor do the depositions of the two affiants suggest likely deficiencies in the affidavits.[1]

██ Despite the strength of Carib's arguments, the Court will find that a genuine issue of fact remains as to whether or not Hosking was acting within the scope of his employment at the relevant time. See Remak v. Quinn, 611 F.2d 36 (3d Cir. 1979). (Holding that even if the evidence is strongly one-sided, a motion for summary judgment must be denied if a material question of fact remains.) The Court reaches this conclusion because of several factors which, when examined collectively, persuade the Court to deny Carib's motion for summary judgment.

██ The primary influence upon the Court is the presumption that Hosking was acting within the scope of his employment because, as Carib concedes, Hosking was a Carib employee driving a vehicle owned by Carib. See, e.g., Nipper v. Brandon Co., 553 S.W.2d 27, 29 (Ark. 1977); Pest Masters, Inc. v. Callaway, 210 S.2d 243 (Ct. App. Ga. 1974); Creekmore v. Horton, 487 S.W.2d 148, 150 (Ct. Civ. App. Tex. 1972). See, also, Pacheco v. United States, 409 F.2d 1234, 1238 (3d Cir. 1969). Under Federal Rule of Evidence 301, this presumption is not completely dissipated by Carib's rebuttal evidence in the affidavits. C. Wright & K. Graham, 21 FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5122 at 572 (1977). In effect, "[u]nless no reasonable jury could disbelieve the rebuttal, the presumption still suffices to carry the issue to the jury". Id. Accord 1 WEINSTEIN'S EVIDENCE ¶ 301[02] at 301–30 (1979). Thus, Rule 301 is clearly intended to encourage the submission to the jury of cases involving a challenged presumption, see id., and the Court must be extremely reluctant to grant a summary judgment motion.

---

[1] The depositions are slightly at odds since Hosking states that on the morning before the accident he asked Heffron if there was any work requiring his attention while Heffron maintains that Hosking spoke only to her husband. However, to whom Hosking spoke is not a material fact.

■ ■ Placed in that perspective, the Court now finds that a reasonable jury could conclude that Hosking was acting within the scope of his employment despite the affidavits to the contrary. Preliminarily, the Court deems it significant that Hosking could have been acting in part to serve his own purposes and still be acting within the scope of his employment. See RESTATEMENT (SECOND) OF AGENCY § 236. Secondly, the two affidavits submitted by Carib are authored by Carib employees who can, therefore, be characterized as "interested witnesses" whose credibility might be called into question by a jury.[2] Thirdly, certain facts might be relied upon by a jury to call into question the credibility of the affiants' statements. For example, Carib paid for the repairs to the truck necessitated by the accident in question. See Creekmore v. Horton, 487 S.W.2d at 150. Similarly, Carib retained counsel to defend Hosking in a criminal negligence case arising out of the accident. Also, since Hosking stopped by Carib's offices on the morning prior to the accident, his subsequent visit to the construction site of his new home might be interpreted as a detour. Thus, his eventual trip home, which resulted in the accident, might be viewed as a delayed commutation from work and, therefore, within the scope of Hosking's employment.

■ Finally, certain policy considerations suggest the appropriateness of denying Carib's motion. Because knowledge of the events relevant to the issue of the scope of employment is exclusively within the control of Carib, the party moving for summary judgment, the Court must be reluctant to deprive the nonmoving party of the opportunity of testing the credibility of the movant or his witnesses in open court. See C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2726 at 524 (1973). Also, in reference to the specific issue of the scope of employment, courts generally submit the issue to the jury. See id. § 2729 at 566–67. See, e.g., Mauk v. Wright, 367 F.Supp. 961, 971 (M.D. Pa. 1973). In addition, since regardless of the disposition of the respondeat superior claim, Carib will remain as a defendant to plaintiffs' negligent entrustment claim, there is little incentive in terms of judicial economy for the

---

[2] The Court does not, however, adopt the holding of at least one court that such interested testimony of a vehicle owner cannot overcome the presumption that the employee was acting within the scope of his employment. See Nipper v. Brandon, 553 S.W.2d at 29. This is especially valid in the case at bar since Hosking's affidavit is actually against his personal financial interest since it supports the elimination of Carib as a codefendant.

Court to grant Carib's motion. Cf. 6 MOORE'S FEDERAL PRACTICE ¶ 56.15[6] at 56-613 (2d ed. 1979).

*Carib's Motion for a Separate Trial*

■ The Court will also deny Carib's motion for a separate trial on the issue of whether or not Hosking was acting within the scope of his employment at the time of the accident. Here again, the continued vitality of the plaintiffs' negligent entrustment negates any convenience that might otherwise be realized by either the Court or the parties if all claims against Carib were resolved at an early stage of the proceedings. This conclusion is also supported by the fact that a trial on the issue of the plaintiffs' damages must also be held regardless of the disposition of the motion for a separate trial.

*Frett's Motion To Strike Cross-Claim*

Defendant Eric Frett moves to strike that portion of the cross-claim of Hosking and Carib that prays for indemnification or contribution on the grounds that it is redundant by virtue of the Virgin Islands Comparative Negligence Statute, 5 V.I.C. § 1451(d). Hosking and Carib concede the motion as to their contribution claim but insist that their indemnification claim exists independently of their claim for contribution and, therefore, is not preempted by the comparative negligence doctrine. Since the Court finds that the distinctions between noncontractual indemnification and contribution are irrelevant to the issue of their continued vitality under comparative negligence, the indemnification claim will be treated in like manner as contribution claims.

In Brooks v. Jackson, 1979 St. Thomas Supp. 120, this Court held that cross-claims for contribution based on a tort theory are superfluous because the trier of fact must apportion liability under the comparative negligence doctrine. Id. at 121. Accordingly, to avoid confusion by juries and prejudice to defendants we stated that such cross-claims should be stricken. Id. The identical reasoning applies to cross-claims for indemnification not premised on contracts since they also merge into comparative negligence. Covington v. Rental Equipment, Inc., 1979 St. Croix Supp. 307, 311; see State v. Katz, 572 P.2d 775, 783 (Alaska 1977). In fact, the RESTATEMENT (SECOND) OF TORTS §§ 886(A), Comment 1, 886(B), Comment 1 (1979) predicts exactly that result.

■ ■ Hosking and Carib correctly point out that indemnity and contribution are mutually inconsistent in the sense that

indemnity shifts the entire loss from one tortfeasor to another while contribution only shifts a proportionate share. See id. § 886(A)(4). However, this distinction does not alter the basic fact that both theories are methods of allocating fault which can be subsumed within the comparative negligence doctrine. In effect, an added claim for indemnification is redundant since a jury operating under comparative negligence can as easily allocate fault between two alleged tortfeasors 100% and 0% as it can 50% apiece.

However, the Court now finds it appropriate to modify the holding of Brooks v. Jackson because of the concerns the decision has raised among attorneys. As discussed above, to achieve the twin goals of avoiding confusion to juries and prejudice to cross-claiming defendants from the appearance of fighting between themselves, we concluded that cross-claims for contribution should be striken. We reasoned that the jury's function of allocating fault could be fulfilled within the more simplified auspices of the comparative negligence doctrine. We envisioned that after a judgment was entered, whatever claims for contribution might arise could then be filed by defense counsel.

 Unfortunately, this decision has generated confusion among attorneys because of fear that they might subsequently forget to follow up on their motions for contribution. Moreover, the result in Brooks bothered attorneys for the cross-claims were stricken not because they were invalid, but solely for the sake of convenience. The Court now perceives an available method which will accomplish its orginal goals and yet avoid the increasing incidence of stomach tissue disintegration among attorneys. Accordingly, from this point onward cross-claims for contribution and, as established by the case at bar, cross-claims for non-contractual indemnity will not be stricken. Instead, the goals of avoiding confusion of jurors and prejudice to cross-claiming defendants will be achieved by prohibiting reference to cross-claims for contribution or non-contractual indemnification during argument, testimony or jury instructions. This solution should satisfy all concerned.

### Frett's Motion To Dismiss Cross-Claim

Frett also moves to dismiss a second cross-claim of Hosking and Carib, one for $25,000 in damages, on the ground that it was a compulsory counterclaim in an earlier action and, therefore, is barred under Federal Rule of Civil Procedure 13(a). The previous action referred to was commenced on April 14, 1977, when Frett

filed a complaint, subsequently amended on April 19, 1977, against Hosking and Carib for damages arising from the identical accident underlying the case at bar. Hosking and Carib filed an Answer to the Amended Complaint, but never counterclaimed for damages. Their only representation in that suit was by counsel retained by their insurance company.

The prior case was settled on November 22, 1977. A Stipulation of Dismissal with prejudice was signed by the Territorial Court Judge and counsel. Accompanying the Stipulation was a Release signed by Frett which awarded him $2,000 in exchange for releasing Carib and Hosking from all liability from the collision.

There is no question that Hosking and Carib's cross-claim arose out of the "transaction or occurrence that is the subject matter" of Frett's former lawsuit. Fed. R. Civ. P. 13(a). Thus, the cross-claim comes within the Rule 13(a) definition of a compulsory counterclaim. Moreover, Rule 13(a) applies whether or not the previous action was settled or fully litigated. Dindo v. Whitney, 451 F.2d 1, 3 (1st Cir. 1971).

■ However, at least in those cases which are settled rather than tried, the bar of Rule 13(a) should be characterized as an estoppel or waiver rather than res judicata. Id. See Reynolds v. Hartford Accident & Indemnity Co., 278 F.Supp. 331, 333 (S.D.N.Y. 1967); La Follete v. Herron, 211 F.Supp. 912, 920 (E.D. Tenn. 1962); Suchta v. Robinett, 596 P.2d 1380, 1384 (Wyoming 1979). The rationale which leads to this conclusion is well stated in Dindo v. Whitney, 451 F.2d at 3:

> The purposes of the rule are "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Constr. Co. v. Pickard, 1962, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31. If a case has been tried, protection both of the court and of the parties dictates that there should be no further directly related litigation. But if the case is settled, normally the court has not been greatly burdened, and the parties can protect themselves by demanding cross-releases. In such circumstances, absent a release, better-tailored justice seems obtainable by applying principles of equitable estoppel.

Thus, an evaluation of the equities basic to Hosking's and Carib's failure to file a counterclaim in the earlier action will determine the fate of their $25,000 cross-claim.

■ ■ Those equities weigh heavily in favor of dismissing the cross-claim. A primary factor considered by courts in applying equitable estoppel to an insured's unraised compulsory counterclaim is whether the insured participated in, or consented to, the settlement by his insurance company. See, e.g., La Follete v. Herron, 211 F.Supp. at 920; Suchta v. Robinett, 596 P.2d at 1384; Perry v. Faulkner, 102 A.2d 908, 909 (N.H. 1954). Yet, Hosking and Carib in no way suggest such a lack of participation or consent. Accordingly, the Court now presumes that the standard practice of an insurance company obtaining an insured's consent prior to settling a case was followed in this instance.

A second significant concern is whether or not the insured knew he had a counterclaim and was capable of filing it during the pendency of the earlier action. For example, in Dindo v. Whitney the Court of Appeals for the First Circuit suggested that if the insured did not realize that a theory of liability under which he could recover damages existed until he commenced the second action, he would probably not be estopped from bringing suit. 451 F.2d at 3. Also, in La Follete v. Herron a district court denied an estoppel defense and relied heavily on the fact that the plaintiff-insured was incapacitated from the time of his accident until the settlement of the defendant's claims against him. 211 F.Supp. at 920. Hosking and Carib cannot, however, make such excuses since their damage claims were apparent from the time of the accident and they were always capable of bringing an action.

A third factor, the delay by Hosking and Carib in ultimately bringing their cross-claims, also does not warrant the imposition of the Court's equitable powers. See Dindo v. Whitney, 52 F.R.D. 194, 199 (D.N.H. 1971), aff'd, 451 F.2d 1. Specifically, Hosking and Carib had a full seven months during the pendency of the previous action in which to evaluate their counterclaim and amend their answer accordingly. Moreover, they did not actually file their cross-claim until a date eight months after settlement and almost two years after the accident.

A fourth point militating against utilizing the Court's equitable powers to benefit Hosking and Carib is the fact that the same attorney, who as counsel to the insurance carrier represented them in the first action, again represents them in the case sub judice. In effect, if the fact that he represented insurance company interests in the first action prevented him from filing the claim, how can he suddenly find himself capable of bringing the claim in the case at bar, where he again represents insurance company interests? Thus,

Hosking and Carib cannot rely on the policy argument that a second action should not be barred because it is better practice not to have insurance attorneys representing the interests of both their employer and the insured. See Reynolds v. Hartford Accident & Indemnity Co., 278 F.Supp. at 333.

 Finally, this Court is concerned that allowance of the cross-claim may prejudice Frett since one of his motivations for settling in the first action probably was the expectation that no counterclaim was forthcoming. Of course, Frett could have protected himself by insisting on the execution of mutual releases. On the other hand, Hosking and Carib did not protect themselves by inserting a provision in the Release expressly keeping open their option to sue. Thus, the Court concludes that equities are in favor of Frett and, therefore, the failure of Hosking and Carib to counterclaim in the original action bars their asserting any such claim in the case at bar.

## ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that defendant Carib Gas Corporation's motions for summary judgment on plaintiffs' claims for negligent entrustment and respondeat superior be, and the same are hereby, DENIED;

IT IS FURTHER ORDERED that defendant Carib Gas Corporation's motion for a separate trial on the issue of scope of employment be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that defendant Eric Frett's motion to strike defendants' Pedro Hosking and Carib Gas Corporation's cross-claim for contribution or indemnification be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that defendant Eric Frett's motion to dismiss the cross-claim of defendants Pedro Hosking and Carib Gas Corporation for $25,000 in damages be, and the same is hereby, GRANTED.