| | | |
|---|---|---|
| JOSEPH C. ADA, | ) | APPEAL NO. 90-006 |
| | ) | CIVIL ACTION NO. 89-419 |
| Plaintiff/Appellee, | ) | |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| ELISA PANGELINAN SABLAN, | ) | |
| fka ELISA S. ADA, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

Argued and Submitted October 4, 1990

Counsel for Appellant: Michael A. White, Esq.
White, Novo-Gradac & Manglona
P.O. Box 222 CHRB
Saipan, MP 96950

Counsel for Appellee: Miguel S. Demapan, Esq.
Demapan & Atalig
P.O. Box 1638
Saipan, MP 96950

Counsel for Amicus Curiae
Patte Pareho:[1] Marybeth Herald, Esq.
Bergsma & Herald
Caller Box PPP 654
Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

---

[1]Patte Pareho is an organization of "persons who believe that the Commonwealth of the Northern Mariana Islands . . . should have a fair and just marital property scheme." Amicus brief at 1. It advocates reversal of the Superior Court's ruling.

Elisa P. Sablan ("Sablan") appeals from an adverse ruling in a divorce action filed by her husband, Joseph C. Ada ("Ada"). The appeal raises a fundamental issue concerning the property rights of married women in the Northern Mariana Islands.

The Superior Court held that Sablan did not have an ownership interest in certain real property acquired during the marriage. The ruling was based upon the antiquated common law principle that all property acquired during marriage becomes the husband's separate property. The trial court felt compelled to apply this principle chiefly because 7 CMC § 3401 requires that "the rules of the common law . . . shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or customary local law to the contrary. . . ."[2]

## I.

Sablan and Ada married on August 1, 1964. They separated on January 4, 1970, and have not lived together since. They have several children, all of whom are now adults.

Some six months after their separation, on June 16, 1970, they

---

[2]The full text of the statute is as follows:

In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and to the extent not so expressed [a]s generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth.

7 CMC § 3401.

executed a document entitled "AGREEMENT FOR CUSTODY OF MINOR CHILDREN AND DIVISION OF COMMUNITY PROPERTY" ("Agreement"). The Agreement provided, <u>inter alia</u>, that Ada was to have custody of two of the children and the "exclusive use and occupancy" of their house lot in Chalan Kanoa (Lot 14, Block 16, since redesignated as Lot 015 H 37, the "Chalan Kanoa property").[3]

The Chalan Kanoa property was acquired during the parties' marriage through the government homesteading program. Ada was the homestead permittee and Sablan the beneficiary (in the event that Ada died before the homestead matured). The government issued Ada a quitclaim deed for the property on June 30, 1969, and subsequently issued a determination of ownership in his name on October 14, 1982. Title to the Chalan Kanoa property was issued in Ada's name on May 25, 1983.

There was no mention in the Agreement of the other parcel at issue in this action (South Garapan Lot 1, Block 28, since redesignated as Lot 009 D 55, the "South Garapan property"). The South Garapan property was purchased by Ada from Soledad T. Tenorio on November 11, 1969, approximately two months before the parties separated. A determination of ownership was issued in Ada's name

---

[3]The Agreement also provided for the distribution of the parties' personal property. Sablan received the family car, Ada the household furnishings, and a joint savings account was distributed in three equal parts to Sablan, Ada and the children (who were to equally share their portion).

Sablan voluntarily waived her rights to spousal and child support.

According to the Agreement, any property acquired after its execution was to be "considered a separate property or properties of the parties, and . . . neither party shall claim such as community property." Agreement at 2.

on June 30, 1971.

On April 12, 1989, Ada filed for divorce.

In her answer, Sablan asserted that the two parcels of real property were not disposed of by the Agreement. Requesting that rights to the parcels be determined by the court, she asked that Ada be given the Chalan Kanoa property but that the South Garapan property be sold with the "value of the land" given to her.

The trial court issued a divorce decree on January 10, 1990, but reserved jurisdiction over the two parcels and ordered further proceedings to determine their value and ownership. Following a hearing, the court ruled that Sablan had no interest in either parcel and that full title and possession remained with Ada.

## The Superior Court Ruling

In its analysis, the court noted that 8 CMC § 1311, the statute cited by Sablan as authority for equitable distribution of the parcels, applied only to "property in which both [parties] have interests."[4] Accordingly, it addressed the issue of whether both parties had interests in the parcels. Citing Matagolai v. Pangelinan, 3 CR 591 (D.N.M.I. App. Div. 1988) and 7 CMC § 3401, the court determined that in deciding the issue it was, first,

---

[4]This statute provides, in pertinent part:

> In granting or denying an annulment or a divorce, the Court may make such orders . . . for the disposition of either or both parties' interest in any property in which both have interests, as it deems justice and the best interests of all concerned may require.

8 CMC § 1311.

420

prohibited from applying community property principles and, second, compelled to utilize common law rules.[5]

The court interpreted the common law to provide: (1) that the wife's legal existence is "for most purposes . . . suspended during marriage and merged in that of the husband"; (2) that the wife has a duty to render service to her husband, entitling him to her outside earnings; (3) that property purchased by the husband in his own name with the wife's property (to which he is entitled by right) becomes his property; (4) that without any agreement for reimbursement, the wife cannot claim an interest in the property purchased by the husband; and, finally, (5) that all property acquired by the husband during the marriage becomes his separate property. Ada v. Sablan, Civil Action No. 89-419, findings and order at 3 (N.M.I. Super. Ct. Feb. 7, 1990).

Relying exclusively on these principles, the court concluded that Sablan had no interest in either the Chalan Kanoa or South Garapan properties. Since both parcels were not jointly owned, the

---

[5]The Matagolai court rejected the application of community property principles in the NMI in the absence of legislation:

> Because community property is a product of civil law rather than common law, it appears that [7 CMC] § 3401 would not authorize judicial adoption of community property law. Of some note, we are aware of no state which has adopted a community property system by way of judicial, rather than legislative, decision.

3 CR at 597. The propriety of the application of ancient common law rules by the trial court is another matter that will be examined infra. However, it is worth noting here that since neither party suggested their application, issues concerning the substance and applicability of the common law "as generally understood and applied in the United States" are addressed by the parties for the first time in this appeal. 7 CMC § 3401.

court decided that the language of 8 CMC § 1311 permitting equitable disposition of "real property in which both have interests" was inapplicable.[6]

## II.

 Sablan frames for our review the following issues:

1. Whether the law as found by the Superior Court is inconsistent with local customary law in the NMI;

2. Whether the law as found by the Superior Court is the common law as understood and applied in the United States;

3. Whether at common law Sablan is entitled to an equitable distribution of property acquired during marriage;

4. Whether the common law doctrine that a wife has no legal existence, separate from her husband, violate Sablan's equal protection rights under the NMI Constitution and the United States Constitution; and

5. Whether the trial court must take into account the constitutional prohibition in rules it devises governing the determination of marital property and its distribution upon dissolution of marriage.

All of the issues involve questions of law and are therefore reviewable de novo. Loren v. E'Saipan Motors, Inc., No. 89-006 (N.M.I. April 16, 1990); Borja v. Rangamar, No. 89-009 (N.M.I. Sept. 17, 1990).

---

[6]"While the court recognizes the harsh results its determination works on [Sablan], in the absence of legislative intervention, it is powerless to reach a different result in this matter." Ada, findings and order at 5.

422

## III.

What is the ownership status of property acquired during marriage? This is the fundamental question raised by this appeal.

We note that NMI "written law" does not expressly touch upon spousal ownership rights with respect to such property. Therefore, following the dictates of 7 CMC § 3401, we next consult local customary law—specifically, Chamorro custom.[7]

### Chamorro Custom

Until recent decades, there was no divorce among the Chamorros as we understand it today.[8] Although separations between spouses did occur, they were infrequent. A. Spoehr, Saipan: The Ethnology of a War Devastated Island 266-67 (Chicago Natural History Museum, 1954; hereafter "Spoehr"). There was therefore no occasion in Chamorro society to consider the ownership and distribution, upon divorce, of property acquired by a husband and wife during marriage.

However, according to Spoehr:

> When a Chamorro woman who owns land marries, the land does not become her husband's and she retains ownership of it. But the husband becomes the manager of the land and it is he who decides the use to which it will be put.

Id. at 135. Spoehr further notes that in making a partida of land to his children, a father "[g]enerally include[s] in the land so

---

[7]Although the record is silent on this point, we note that both Sablan and Ada are of Chamorro ancestry.

[8]Divorce, a creature of statute, was not legally recognized in the NMI until the enactment of the Trust Territory Code after WWII.

divided . . . any land the mother may have owned at the time of her marriage, as well as that owned by the father, <u>together with land acquired during their married years</u>." Spoehr at 136 (emphasis added).[9] Unfortunately, Spoehr does not elaborate on spousal ownership rights in land acquired during marriage.

Nonetheless, his study supports the fact (and it is not really disputed by the litigants) that under Chamorro custom both husband and wife retain individual ownership over property that each brings into a marriage.[10] They may convey such property, together with land acquired during marriage, to their children by partida.

As Spoehr notes, apart from separate property which a husband or wife bring into a marriage, there is in Chamorro custom a second type of property, that acquired by a married couple during marriage. Since this property is not the separate property of either person, and because it is acquired during marriage, we shall refer to it as "marital property."

Since neither NMI written law nor Chamorro customary law resolves the issue of spousal ownership rights in property acquired during marriage, 7 CMC § 3401 requires application of the common law "as expressed in the restatements of the law approved by the American Law Institute and to the extent not so expressed as generally understood and applied in the United States."

---

[9]<u>See also</u> <u>Blas v. Blas</u>, 3 TTR 99 (High Ct. Tr. Div. 1966).

[10]This custom is contrary to the antiquated common law principle giving the husband on his marriage a freehold estate in his wife's separate property, as well as in any land acquired by her during marriage. <u>See</u> 41 Am.Jur.2d <u>Husband and Wife</u> § 44 (1968).

## The Common Law

We note that there is no Restatement provision addressing the issue of what interest either or both spouses have in property acquired during marriage. It is therefore necessary to consult the common law "as generally understood and applied in the United States."

The law concerning spousal interest in property acquired during marriage has undergone substantial transformation in the United States over the past century. The ancient common law in this area has been almost completely discarded.

Long ago, when a woman married, her separate legal identity was perceived to be merged into her husband's legal identity. Under this common law theory of unity, a married woman was incapable of acquiring or disposing of property without her husband's consent. See 41 Am.Jur.2d Husband and Wife § 16 (1968). Over the past century, reform legislation largely abolished such restrictions, which are now the exception rather than the rule. Id. § 17.

Also almost entirely abolished is the common law principle that property acquired during marriage by the husband is his separate property. Generally, both husband and wife are considered to have interests in "marital property"--property acquired during marriage. As of 1988, 40 states, Washington, D.C., and the Virgin Islands had altered the ancient common law by permitting equitable distribution of either all property or marital property in divorce proceedings. See Freed & Walker, Family Law in the Fifty States:

_An Overview_, 21 Fam.L.Q. 417 (1988).[11] Mississippi is the only state in which title alone still controls the ownership and distribution of property upon divorce. Even in that state, recent decisions have meliorated the harsh effect of this rule. _Id_. Thus, it is no longer true that the common law principles which the trial court applied in this case are those which are "generally understood and _applied_ in the United States." (Emphasis added.)

Apart from the foregoing considerations, we believe that it is important for us to consider a paramount source of NMI law in determining whether the trial court's application of the antiquated common law principles at issue is justifiable.

### The NMI Constitution

Our Constitution provides:

> No person shall be denied the equal protection of the law. No person shall be denied the enjoyment of civil rights or be discriminated against in the exercise thereof on account of race, color, religion, ancestry or sex.

N.M.I. Const. art. I, § 6. The appellants contend (and amicus urges) that the common law principles adopted by the trial court run afoul of this provision. We agree.[12]

---

[11]Nine states and Puerto Rico had adopted community property laws permitting equal or equitable division of property. _Id_.

[12]We note that this argument was raised for the first time on appeal. Generally, an appellate court may not consider such arguments. _Camacho v. Civil Service Commission_, No. 90-007 (N.M.I. Sept. 21, 1990). "There are three narrow exceptions to this rule: 1) a new theory or issue arises because of a change in the law while the appeal was pending; (2) the issue is only one of law not relying on any factual record; or (3) plain error occurred and an injustice might otherwise result if the appellate court does not consider the issue." _Camacho_, slip op. at 9. Exceptions (2) and

Because Article I, § 6 expressly prohibits discrimination based on sex, any discrimination based thereon is suspect and must withstand strict judicial scrutiny. Unless it is justified by a compelling state interest, it is invalid.[13]

The antiquated common law principles at issue in this appeal clearly discriminate on the basis of sex. We cannot find any compelling state interest to justify their application as our rules of decision.[14] They are an anomaly in today's society, which has transformed its laws with the aim of according women the same basic rights enjoyed by men. The trial court erred in applying them.

The NMI Constitution is a paramount source of Commonwealth law, guaranteeing basic rights for all persons, both male and female. Our courts must be ever watchful when considering the

(3) are applicable in this case.

[13]According to pertinent analysis of Article I, § 6,

> classifications based on race, color, religion, ancestry or sex . . . are invalid, unless compelling reasons, sufficient to withstand the strictest scrutiny, are adduced to sustain them. This section applies to private action as well as to government action. The interest for which the classification is used must be legitimate and very important and there must be no less restrictive classification that could accomplish that objective.

Analysis of the Constitution of the Northern Mariana Islands 22 (1976). This analysis is consistent with judicial interpretation of similar provisions in state constitutions. See Hewitt v. State Accident Insurance Fund Corporation, 653 P.2d 970 (Ore. 1982) and cases cited therein at 977.

[14]See DiFlorido v. DiFlorido, 331 A.2d 174 (Pa. 1975) (common law presumption that ownership of property used and possessed by both spouses is in the husband violates state equal rights amendment).

application of common law principles that either on their face or as applied violate such rights.

## Marital Property

█ As we have discussed, under modern domestic relations law both husband and wife are considered to have an interest in marital property. This is so because both have made contributions to the marriage, which is regarded as a shared enterprise or partnership.[15] There is a presumption that property acquired by either spouse subsequent to the marriage and before its termination is marital property, and the burden of overcoming this presumption is upon the party seeking to exclude property from division between the parties.[16]

---

[15]See, _e.g._, In re Marriage of Komnick, 417 N.E.2d 1305 (Ill. 1981). According to recent commentary:

> The rise of the equitable distribution doctrine parallels and embodies the idea that marriage is a voluntary partnership, with each partner contributing to the marital estate in the manner in which the partners themselves have chosen. Under that view, there is little room for the idea that prevailed only a few years ago that one spouse was entitled to ownership of all property titled in his or, more rarely, her name simply because that spouse took care of the "books" of the marital partnership, while the other spouse kept the premises clean and raised the children. The idea that a "homemaker" contributes as much to a marriage as a "breadwinner" was first adopted in the community property jurisdictions. In more recent years, the majority of jurisdictions have abandoned the idea that legal title to property is determinative of its ownership upon divorce.

Annotation, _Divorce: Equitable Distribution Doctrine_, 41 A.L.R.4th 481, 485-86 (1985).

[16]See, _e.g._, In re Marriage of Schriner, 410 N.E.2d 572 (Ill. App. Ct. 1980).

We now hold that, by virtue of the prohibition on discrimination based on sex under Article I, § 6 of the NMI Constitution, the abolition of the common law principles at issue, and Chamorro custom,[17] both husband and wife have an ownership interest in any property acquired during marriage unless it is shown that such property belongs solely to one party. Upon divorce, this "marital property" is subject to equitable distribution under 8 CMC § 1311.[18]

IV.

Because both the Chalan Kanoa and South Garapan properties were acquired during Sablan and Ada's marriage they are presumptively marital properties.[19] Consequently, the trial court may, after a hearing and after considering any submitted evidence, equitably distribute the same pursuant to 8 CMC § 1311. We REVERSE the order of the trial court determining that the parcels belong

[17]As noted infra, the common law principles at issue are inconsistent with the Chamorro custom that married women are capable of retaining separate ownership of property that they bring into a marriage.

[18]The trial court's application of the common law principles at issue would render this statute a nullity. Since the principles prevent a married woman from owning property acquired during marriage, there could never be "property in which both have interests" for the trial court to equitably distribute. "In the construction of a statute the general law is that a statute should be so interpreted to give it effect . . . we must start with the presumption that [the] legislature intended to enact an effective law, and it is not to be presumed that legislation is a vain effort, or a nullity." Levy v. Kimball, 465 P.2d 580, 583 (Haw. 1970).

[19]We note that this presumption is not conclusive. Upon presentation of sufficient evidence, it may be rebutted.

solely to Ada, and REMAND the matter for further proceedings consistent with this opinion.

Dated at Saipan, MP, this ____16th____ day of November, 1990.

_____
Jose S. Dela Cruz, Chief Justice

_____
Ramon G. Villagómez, Associate Justice

_____
Jesus C. Borja, Associate Justice