**DIANA BANKS, ALOMA BARNABAS, FRANKLIN BARNABAS, PATRICIA JOSEPH, and MERLE PENHA-MURPHY, Appellants/Plaintiffs**

**v.**

**INTERNATIONAL RENTAL AND LEASING CORPORATION d/b/a BUDGET RENT A CAR, Appellee/Defendant**

S. Ct. Civ. No. 2011-0037

Supreme Court of the Virgin Islands

December 15, 2011

ROBERT L. KING, ESQ., Law Offices of Robert L. King, Esq., St. Thomas, USVI, *Attorney for Appellants*.

MICHAEL J. SANFORD, ESQ., Sanford Amerling & Associates, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*, and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(December 15, 2011)

HODGE, *Chief Justice*. On April 26, 2011, this Court received an April 19, 2011 Certification Order from the United States Court of Appeals for the Third Circuit, which requested that this Court, pursuant to Supreme Court Rule 38 and Third Circuit Local Appellate Rule Misc. 110, resolve a question of Virgin Islands law related to a consolidated appeal pending in the Third Circuit. In a May 20, 2011 Order, this Court agreed to accept jurisdiction and to answer the question as formulated in the April 19, 2011 Order:

> Whether, under Virgin Islands law, including V.I. CODE ANN. tit. 1 § 4, a plaintiff may pursue a strict liability claim against a lessor for injuries resulting from a defective product.

We respond, for the reasons that follow, that Virgin Islands law permits a plaintiff to pursue such a claim.

## I. JURISDICTION AND LEGAL STANDARD

■■ "The Supreme Court of the Virgin Islands may answer questions of law certified to it by a court of the United States . . . if there is involved in any proceeding before the certifying court a question of law which may be determinative of the cause then pending in the certifying court and concerning which it appears there is no controlling precedent in the decisions of the Supreme Court." V.I.S.CT.R. 38(a). While "answering a certified question is not an adjudicative function," this Court possesses the inherent power to answer certified questions as the highest local court in this jurisdiction. *See Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010); 4 V.I.C. § 32(b) ("The Supreme Court shall have all inherent powers . . . ."). However, "the certified question procedure . . . does not confer on us plenary jurisdiction over cases pending in the courts of other sovereign entities," and thus "our answer must be confined to the circumstances of the case as established by the stipulated facts" in the

972

certification order.[1] *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 127 Cal. Rptr. 3d 185, 254 P.3d 237, 249 (2011). Rather, the United States Supreme Court has strongly endorsed the use of certification by federal courts to resolve questions of local law in order to "save time, energy, and resources" and "help[] build a cooperative judicial federalism." *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 40 L. Ed. 2d 215 (1974). *See also Salve Regina College v. Russell*, 499 U.S. 225, 237 n.4, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991) ("[A] question of state law usually can be resolved definitely . . . if a certification procedure is available and is successfully utilized.").

## II. DISCUSSION

"The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4. As the Third Circuit observed in its April 19, 2011 Order, an apparent conflict exists between RESTATEMENT (SECOND) OF TORTS §§ 402A, 407, and 408 ("Second Restatement") and RESTATEMENT (THIRD) OF TORTS: Product Liability §§ 1 and 20 ("Third Restatement"), in that the Third Restatement subjects a lessor of a defective product to strict liability, whereas several courts applying Virgin Islands law — but not this Court — have interpreted the Second Restatement to hold a lessor liable only for negligence. *See, e.g., Pynes v. Am. Motors Corp.*, 19 V.I. 278, 280 (D.V.I. 1982); *Pool v. Hertz Corp.*, 1977 St. X. Supp. 520 (D.V.I. 1977); *Polius v. Clark Equip. Co.*, 802 F.2d 75, 78-79 (3d Cir. 1986); *Harvey v. Sav-U Car Rental*, No. 07-CV-115, 2010 U.S. Dist. LEXIS 73294 (D.V.I. July 21, 2010). Thus, prior to answering the certified question, as formulated, this Court must first determine (1) whether the phrase "local law" in section 4 encompasses judicial precedents from this Court; and

---

[1] We note that, in their respective briefs, the parties address numerous issues that are obviously beyond the scope of the certification order, including, but not limited to, whether the District Court erred in dismissing Franklin Barnabas's claim for loss of consortium; and whether Diana Banks and the other appellants in the Third Circuit matter may proceed with warranty-based claims against International Rental and Leasing Corporation. Accordingly, this Court declines to address any of these issues.

(2) whether section 4 precludes this Court, as the highest local court in the Virgin Islands, from declining to follow the latest approved Restatement.

## A. The Meaning of "Local Law"

 The Virgin Islands Legislature has instructed that "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language," but that "[t]echnical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." 1 V.I.C. § 42. Applying this directive, the phrase "local law" means "[t]he law of a particular jurisdiction, as opposed to the law of a foreign state," BLACK'S LAW DICTIONARY 1023 (9th ed. 2009), with "law" referring to "[t]he aggregate of legislation, *judicial precedents*, and accepted legal principles." *Id.* at 962 (emphasis added). *See also Co-Build Cos., Inc., v. V.I. Refinery Corp.*, 570 F.2d 492, 494, 15 V.I. 528, 533 (3d Cir. 1978) ("When no *precedents* relate specifically to the adjudication of a Virgin Islands dispute, the courts are directed to turn to the various Restatements of Law, approved by the American Law Institute, which are to provide the rules of decision for such cases 'in the absence of local laws to the contrary.' ") (emphasis added); *In re Manbodh Asbestos Litig. Series*, 47 V.I. 215, 227 (V.I. Super. Ct. 2005) ("To date, courts have interpreted 'local laws' to include both legislation and common law precedent.") (collecting cases). This Court has previously clarified what judicial opinions constitute "precedent" for both the Supreme Court and the Superior Court:

> Although the establishment of this Court has changed the relationship between the local Virgin Islands judiciary and the Third Circuit, this Court's creation "did not erase pre-existing case law," and thus "prec-edent that was [extant] when [the Court] became operational continues unless and until [the Court] address[es] the issues discussed there." *People v. Quenga*, 1997 Guam 6 ¶ 13 n. 4. Accordingly, decisions rendered by the Third Circuit and the Appellate Division of the District Court are binding upon the Superior Court even if they would only represent persuasive authority when this court considers an issue.

*In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009), *cert. denied*, No. 09-3492, slip op. at 1 (3d Cir. Nov. 5, 2009). *Cf. Estep v. Construction Gen., Inc.*,

546 A.2d 376, 382 n.5 (D.C. 1988) (explaining that decisions of highest local appellate court in District of Columbia constitute "local law" to which federal district courts and federal courts of appeals should defer, rather than the other way around).

 Importantly, the Third Circuit has indicated that it will "defer to decisions of the Supreme Court of the Virgin Islands on matters of local law unless [it] find[s] them to be manifestly erroneous."[2] *Pichardo v. V.I. Comm'r of Labor*, 53 V.I. 936, 939, 613 F.3d 87, 89 (3d Cir. 2010). Significantly, the Third Circuit has recently clarified that, pursuant to the standard articulated in *Pichardo*, this Court is not required to follow the Third Circuit's interpretation of a local Virgin Islands statute when the Third Circuit's decision was rendered prior to this Court having the opportunity to interpret the statute in the first instance:

> In the absence of controlling Virgin Islands precedent, we believe that our analogy to [prior federal case law construing an analogous federal provision] is necessary to decide the case before us. We are mindful, of course, that the authority to interpret [a Virgin Islands Code provision] lies centrally with the newly created Supreme Court of the Virgin Islands. *See Pichardo v. V.I. Comm'r of Labor*, [53 V.I. 936, 939,] 613 F.3d 87, 89 (3d Cir. 2010) (holding that this Court will "defer to decisions of the Supreme Court of the Virgin Islands on matters of local law unless we find them to be manifestly erroneous"). We do not mean by our decision today to preclude the Supreme Court of the Virgin Islands from offering its own interpretation of [the Virgin Islands Code provision], and whether and under what circumstances a justification defense is available. Until that day comes, however, we decide this case applying our most analogous precedent.

*Gov't of the V.I. v. Lewis*, 620 F.3d 359, 364 n.5, 54 V.I. 882 (3d Cir. 2010) (citation omitted). Based on these authorities, we conclude that "local law," as used in section 4 of title 1, encompasses judicial decisions which are binding on the court required to apply section 4. Thus, this Court is bound

---

[2] Pursuant to section 23 of the Revised Organic Act, "for the first fifteen years following the establishment of the [Supreme Court of the Virgin Islands], the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had." 48 U.S.C. § 1613.

only by those decisions of the Third Circuit Court of Appeals in which certiorari has been granted and this Court's interpretation of local law has been reversed.[3]

## B. Authority of this Court to Deviate from Third Restatement

As noted above, while the Third Circuit and the District Court have previously applied the Second Restatement, as the Third Circuit instructed in *Lewis*, and as this Court observed in *In re People*, such decisions are not binding on this Court, and thus, with respect to this Court, there is an "absence of local laws to the contrary" as contemplated in 1 V.I.C. § 4. Therefore, we must also determine whether this Court is bound to follow the most recent version of the Restatement approved by the American Law Institute whenever it is required to decide an issue of first impression, or whether, like other courts of last resort, this Court possesses the inherent power to shape the common law in the Virgin Islands.

 We conclude that the Legislature did not intend for section 4 of title 1 to compel this Court to mechanically apply the most recent Restatement. First we observe that the historical note that follows section 4 of title 1[4] states that the purpose of enacting section 4 was to rewrite section 6 of chapter 13 of title IV of the 1921 Codes, which had provided that "[t]he common law of England as adopted and understood in the United States shall be in force in this District, except as modified by this [Code]." But more importantly, the historical note states that the Legislature chose to replace that provision with section 4 so as to "more accurately . . . express the concept of the Common Law as constituting a body of rules established by *precedent*, as distinguished from a body of statutory law . . . ." (emphasis added). Thus, any claim that this Court lacks the authority to decline to follow a Restatement provision is wholly inconsistent with the historical note, in that such an interpretation of

---

[3] We pass no opinion on whether the Third Circuit's consideration of common law doctrines on certiorari from this Court will continue to function as "local law to the contrary" for this Court once the period of review pursuant to 48 U.S.C. § 1613 lapses.

[4] Because "[t]he microfilm containing legislative history between February 28, 1957 and April 13, 1959 . . . was lost," this Court is permitted to consult "the referenced history and prior law notes to decipher the intent of the drafters of the Code and provide a historical context." *Manbodh*, 47 V.I. at 228 n.8.

section 4 would essentially require this Court to treat the Restatements as if they are statutes, an approach which could not be reconciled with the Legislature's clear intent to develop the common law through judicial precedent.

We recognize that the Supreme Court of the Northern Mariana Islands, in interpreting 7 CMC § 3401[5] — a provision similar to section 4 — held that it "is not vested with a similar degree of freedom in formulating [its] common law as that exercised by courts in other jurisdictions, because of the statutory dictate that we apply the Restatement." *Ito v. Macro Energy,* 4 N. Mar. I. 46, 56 (N. Mar. I. 1993). But despite this holding, we note that the Northern Marianas Islands Supreme Court has departed from this early interpretation of 7 CMC § 3401, and now recognizes its authority to adopt common law rules that differ from the majority approach if it believes a departure is warranted. *See Marine Revitalization Corp. v. Dep't of Land and Natural Resources,* 2010 MP 18 ¶36 (N. Mar. I. 2010) ("While we do not follow the majority approach blindly, absent sufficient reasons, this Court adopts the majority's interpretation of the common law when our law is silent.") (citing 7 CMC § 3401); *Tan v. Younis Art Studio, Inc.,* 2007 MP 11 ¶ 31 (N. Mar. I. 2007) ("[C]ourts must first look to local written law, which includes our case law adopting *and/or adapting* Restatement provisions. To the extent local written law is lacking, the Restatement fills the gaps.") (emphasis added). Moreover, as noted above, the historical note accompanying section 4 provides strong support for the proposition that the Virgin Islands Legislature intended for the common law to be shaped by judicial precedents, which is wholly inconsistent with blindly following the Restatements. *See also Pichardo,* 613 F.3d at 95 (noting that establishment of the Supreme Court of the Virgin Islands will allow the Virgin Islands to "begin developing indigenous jurisprudence" (quoting *Edwards v. HOVENSA, LLC,* 497 F.3d 355, 362 n.3 (3d Cir. 2007))).

▮ Nevertheless, even in the absence of the historical note, we would find that section 4 does not deprive this Court — or, in the absence of

---

[5] "In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth." 7 CMC § 3401.

binding precedent, the Superior Court — of the ability to shape the common law. We cannot ignore that, at the time both section 4 of title 1 and its predecessor in the 1921 Codes were initially enacted, the Virgin Islands lacked a fully developed local judiciary, with the District Court — a federal court established by Congress rather than the Legislature and consisting of judges selected by the President of the United States rather than the Governor of the Virgin Islands — possessing jurisdiction over most civil actions, and local courts only exercising jurisdiction over only relatively minor civil claims.[6] Thus, at the time the Legislature enacted section 4, the most significant Virgin Islands judicial decisions were being rendered by the District Court, which — although hearing cases that in other jurisdictions would ordinarily be heard by a local court — was "essentially a federal creature" that "was created by federal law" and consisted of "federal judges" appointed by the President and confirmed by the United States Senate. *BA Props. Inc. v. Gov't of the V.I.*, 299 F.3d 207, 212 (3d Cir. 2002). Moreover, even though the Virgin Islands local judiciary continued to expand and receive greater jurisdiction over local matters in the decades that followed, all decisions rendered by the Superior Court and its predecessor courts continued to be reviewed on appeal by the District Court, which made it "very difficult to attain" the goal of establishing "an indigenous Virgin Islands jurisprudence" given that local judges lacked the ability to issue decisions that would constitute binding precedent in the territory. *Id.*

 A pivotal change occurred, however, when Congress subsequently amended the Revised Organic Act of 1954 to authorize creation of a local appellate court. 48 U.S.C. § 1613a. When the Legislature established this Court in 2004, it reposed in this Court "the supreme judicial power of the Territory." 4 V.I.C. § 21. This includes the power to both interpret local law and modify the common law. *See, e.g.,*

---

[6] When the 1921 Codes were in effect, the local judiciary consisted of three Police Courts, which were not courts of record and only possessed concurrent jurisdiction with the District Court over civil claims not exceeding $200.00. *See Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1054 & n.4 (3d Cir. 1982). When the Legislature replaced the Police Courts with the Municipal Court — a court of record which served as the predecessor to the Superior Court — in 1957, it vested the Municipal Court with exclusive jurisdiction over civil cases up to $500.00 and concurrent jurisdiction with the District Court over civil cases exceeding $500.00 but no more than $10,000.00. *See Steffey v. Estate of Savain*, 15 V.I. 260, 262 (V.I. Super. Ct. 1978).

*Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) ("The Arkansas Supreme Court is the final authority on the interpretation of Arkansas law. As the supreme judicial authority of the state, it decides what state law is . . . ."); *Virmani v. Presbyterian Health Services*, 350 N.C. 449, 515 S.E.2d 675, 691 (1999) ("[A]s the common law originally was, and largely continues to be, a body of law discovered and announced in court decisions, this Court, as the court of last resort in North Carolina, may modify the common law of North Carolina . . . ."). Significantly, section 21 of title 4 represents both the first time that a local court created by the Legislature — as opposed to Congress — was invested with "supreme judicial power," as well as the first time that a local appellate court consisting entirely of local judges appointed by the Governor with the advice and consent of the Legislature would review on direct appeal decisions issued by a local trial court. Given that section 21 and section 4 were both passed by the same legislative body, and section 21's conferral of "supreme judicial power" upon on this Court is inconsistent with section 4's mandate that courts follow the Restatements, we conclude that the adoption of section 21 of title 4 in 2004 supersedes and alters section 4 of title 1, which is one of the initial provisions of the Virgin Islands Code that were adopted in 1957, 1 V.I.C. § 3, and that therefore this Court and — to the extent not bound by precedent, the Superior Court, *see In re People*, 51 V.I. at 389 n.9 — may determine the common law without automatically and mechanistically following the Restatements. *See New Jersey Air Nat'l Guard v. Fed. Labor Relations Auth.*, 677 F.2d 276, 282 (3d Cir. 1982) (explaining that, when two statutes are in apparent conflict, court possesses a duty to harmonize both enactments) (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974)).

We recognize that it is theoretically possible to harmonize section 4 of title 1 and section 21 of title 4 by construing section 4 of title 1 as the Legislature exercising its own inherent power to alter or abrogate the common law. Such an interpretation, however, is inconsistent with the historical note, which clearly reveals that the Legislature intended for judicial precedents to shape the common law. Moreover, while we acknowledge that the Legislature possesses concurrent authority to alter the common law, and that the will of the Legislature will generally prevail

in the event of a conflict between a statute and a judicial decision,[7] we can find no authority for the proposition that the Legislature possesses the authority to adopt a statute which not only *completely* deprives this Court of the ability to exercise its supreme judicial power to shape the common law, but delegates that power to the American Law Institute and to the governments of other jurisdictions. *See Kendall v. Russell*, 572 F.3d 126, 136, 52 V.I. 1021 (3d Cir. 2009) (explaining that power to establish qualifications for judges and to confirm judges — a legislative power — does not encompass the power to delegate the power to remove judges — a judicial power — to an administrative agency due to separation of powers principles inherent in the Revised Organic Act); *see also Ada v. Sablan*, 1 N. Mar. I. 415, 418 n.2 (N. Mar. I. Super. Ct. 1990) (observing that 7 CMC § 3401, if interpreted to mandate automatic application of the majority rule in all instances, may violate "the right to self-government guaranteed to the people of the Commonwealth . . . . because the legislatures of Virginia, California, etc., now decide, albeit indirectly, what the law should be in the Commonwealth.").

For the forgoing reasons, we conclude that 1 V.I.C. § 4 does not incorporate all of the Restatement provisions as if they were actual statutory text; nor does it delegate to the American Law Institute the authority to enact changes in the law of the Virgin Islands in all of the areas covered by the Restatements. *See Dunn v. HOVIC*, 1 F.3d 1371, 1392, 28 V.I. 467 (3d Cir. 1993) (Alito, J., concurring). Rather, we hold that, because our own decisions constitute "local law" within the meaning of section 4 — and, unless found to be manifestly erroneous by the Third Circuit, are binding on all other courts applying Virgin Islands local law — we therefore possess the discretion to decline to follow the most recent Restatement provision.

---

[7] *See, e.g., Valerie M. v. Ariz. Dept. of Econ. Sec.*, 219 Ariz. 331, 336, 198 P.3d 1203, 1208 (2009) ("[A] valid statute specifying the burden of proof prevails over common law or court rules adopting a different standard."); *Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614, 39 3 Ky. L. Summary 12 (Ky. 1992) ("[J]udicially created common law must always yield to the superior policy of legislative enactment and the Constitution.").; *Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 593 Pa. 184, 928 A.2d 1013, 1017-18 (2007) ("[I]t is the Legislature's chief function to set public policy and the courts' rule to enforce that policy, subject to constitutional limitations.").

## C. Conflict Between Second Restatement and Third Restatement

 Finally, with the above standard in mind, we reach the merits of the question the Third Circuit has certified to us. To determine whether to change the common law by judicial decision, a court should consider whether "changing circumstances compel [the] court[] to 'renovate' outdated law and policy" by "creating new public policy." *Wholey v. Sears Roebuck*, 370 Md. 38, 803 A.2d 482, 489 (2002). In other words, "this Court must weigh the benefits versus the burdens of the proposed change." *Gilbert v. Barkes*, 987 S.W.2d 772, 774 (Ky. 1999). In their brief, Diana Banks and the other appellants in the Third Circuit proceeding (collectively "Banks") contend that a change in the common law is warranted primarily because all of the cases, beginning with *Pynes*, which interpreted the Second Restatement as precluding holding a lessor strictly liable were wrongly decided.

Although this Court is not bound to continue to follow the *Pynes* court's interpretation of the Second Restatement, it is important to emphasize — as the District Court correctly observed in this case — that "section 402A [of the Second Restatement] has received widespread acceptance in Virgin Islands courts." *Banks v. Int'l Rental & Leasing Corp.*, Civ. Nos. 2002-200 through-203, 2008 U.S. Dist. LEXIS 12214, at *10 n.5 (D.V.I. Feb. 13, 2008). Therefore, while this Court possesses the discretion to reject the decision in *Pynes*, doing so has a definite burden associated with it, since it would disrupt the state of the law in the Virgin Islands. Accordingly, *Pynes* and its progeny, while only representing persuasive authority for this Court, should nevertheless still be "entitled to great respect." *People v. Todmann*, 53 V.I. 431, 438 n.6 (V.I. 2010) (quoting *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971)), *cert. denied*, No. 10-2738, slip op. at 1 (3d Cir. Aug. 18, 2010). *See also Johnson v. Calado*, 159 Wis. 2d 446, 464 N.W.2d 647, 653 (1991) ("We do not imply that there is no argument for the Restatement rule, but hypothetical advantages do not outweigh the salutary experience Wisconsin has had with the rule.").

 Nevertheless, we decline to endorse the *Pynes* rule. While International Rental and Leasing Corporation correctly recognizes in its brief that the Third Restatement has only been adopted by a minority of jurisdictions and, in several subject matters, endorses minority rules instead of simply restating the majority rule — the reason the Legislature

included the Restatements within the ambit of section 4 — it fails to acknowledge (1) that a strong preference exists for following the most recent Restatement over an older version, *see, e.g., Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 180, 13 V.I. 666 (3d Cir. 1977); *DeLoach v. Alfred*, 191 Ariz. 82, 952 P.2d 320, 322 n.2 (Ariz. Ct. App. 1997), *vacated on other grounds*, 192 Ariz. 28, 960 P.2d 628 (Ariz. 1998) (agreeing to adopt most recent Restatement but reversing its application to facts of case); (2) that courts generally do not adopt the "Third Restatement" as a whole, but typically consider adopting specific sections, *see Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 169 (Iowa 2002), and (3) that the jurisdictions that have adopted the relevant Third Restatement provisions, when combined with the jurisdictions that have interpreted section 402A of the Second Restatement to apply to lessors of chattels, constitute a clear majority.[8] Importantly, an outright majority of jurisdictions had adopted this rule even before publication of the Third Restatement, and — in fact — this rule was already adopted by a majority of the jurisdictions that had considered the question at the time the *Pynes* case was decided in 1982. *See Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1297-98 (R.I. 1982) ("Despite the early cases and the language of § 402A, however, the majority of jurisdictions that have considered the issue have extended the doctrine of strict tort liability to commercial lessors of personal property.") (collecting cases). In other

---

[8] *See, e.g., Wright v. Newman*, 735 F.2d 1073, 1077 (8th Cir. 1984) (applying Missouri law); *Bachner v. Pearson*, 479 P.2d 319, 328 (Alaska 1970); *Price v. Shell Oil Co.*, 2 Cal. 3d 245, 85 Cal. Rptr. 178, 466 P.2d 722, 723 (1970); *Baird v. Power Rental Equip., Inc.*, 35 Colo. App. 299, 533 P.2d 941, 944 (1975); *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581, 586-87 (Del. 1976); *Futch v. Ryder Truck Rental, Inc.*, 391 So.2d 808, 810 (Fla. Ct. App. 1980); *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470 P.2d 240, 243 (1970); *Galluccio v. Hertz Corp.*, 1 Ill. App. 3d 272, 274 N.E.2d 178, 182 (1971); *Gilbert v. Stone City Constr. Co.*, 171 Ind. App. 418, 357 N.E.2d 738, 742 (1976); *Cardwell v. Jefferson Rentals Div. of J-R Equip. Corp. Assur. Co.*, 379 So.2d 255, 256 (La. Ct. App. 1979); *Gabbard v. Stephenson's Orchard, Inc.*, 565 S.W.2d 753, 757 (Mo. Ct. App. 1978); *Hawkins Constr. Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643, 654 (1973); *Cintrone v. Hertz Truck Leasing & Rental Serv.*, 45 N.J. 434, 212 A.2d 769, 778 (1965); *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732, 736-37 (1972); *Waters v. Patent Scaffold Co.*, 75 A.D.2d 744, 427 N.Y.S.2d 436, 437 (N.Y. App. Div. 1980); *Dewberry v. La Follette*, 598 P.2d 241, 242 (Okla. 1979); *Fulbright v. Klamath Gas Co.*, 271 Ore. 449, 533 P.2d 316, 321 (1975); *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736, 738-39 (1977). *See also Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 353 S.E.2d 340, 341 (1987) ("In those states which recognize the doctrine of strict liability in tort, the vast majority hold the doctrine applicable to bailments and leases in a commercial setting) (citing 52 A.L.R.3d 121).

words, Banks is correct that, with respect to the issue of whether a lessor may be held strictly liable for a defective product, this Court must ultimately decide whether to continue to follow the minority interpretation of the Second Restatement adopted by *Pynes* simply because it has been utilized by Virgin Islands local courts, or to recognize and apply the majority rule articulated in the Third Restatement and endorsed by a majority of jurisdictions.

██ ██ Under these circumstances, we find no compelling reason to perpetuate the *Pynes* interpretation of the Second Restatement to the exclusion of the Third Restatement. First, this Court has previously observed that section 4 of title 1 " 'is impressive evidence that the Virgin Islands legislature intends [majority] rule to govern in the absence of specific legislation.' " *Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 498-99 (V.I. 2008) (quoting *Dyndul v. Dyndul*, 541 F.2d 132, 134, 13 V.I. 376 (3d Cir. 1976)). While, for the reasons given earlier, this is not a dispositive factor with respect to this Court, the fact that a majority of jurisdictions endorse holding lessors of chattels strictly liable for introducing defective products into the stream of commerce — regardless of whether that authority is based on the Second or Third Restatement — makes abandoning the *Pynes* decision "consistent with Virgin Islands jurisprudence and policy." *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 204, 44 V.I. 389 (3d Cir. 2002) (identifying factors Virgin Islands courts should consider when resolving questions of Virgin Islands law that are not clearly controlled by other authorities). Moreover, *Pynes*, while entitled to some deference, is not a strong candidate for *stare decisis*, in that — in addition to being issued by the District Court acting in its capacity as a trial court — the decision is only slightly more than two pages long, cites to no case law from other jurisdictions construing section 402A of the Second Restatement, and — perhaps most significantly — relied on the mistaken belief that only "several other jurisdictions have extended § 402A strict liability to include lessors of goods," 19 V.I. at 280, when, in fact, a majority of jurisdictions to consider the question had already done so by this time. *Brimbau*, 440 A.2d at 1297-98. But even more importantly, holding lessors strictly

liable represents the sounder rule,[9] in "that a commercial lessor acts much like a retailer and manufacturer in placing products in the stream of commerce, and . . . a lessor will in most instances be in a better position than a consumer to prevent the circulation of defective products." 52 A.L.R.3d 121. Accordingly, we answer the certified question presented in the affirmative and advise the Third Circuit that, under Virgin Islands local law, lessors may be held strictly liable for injuries resulting from a defective product.

## III. CONCLUSION

 Although judicial precedents constitute local law for purposes of section 4 of title 1 of the Virgin Islands Code, this Court, as the highest local court in the Virgin Islands, is not bound by any of the decisions applying the Second Restatement, since none constitute binding precedent for this Court. Moreover, since this Court possesses the inherent authority to shape Virgin Islands common law, we are not strictly bound by section 4 to always apply the most recent Restatement provisions, since this Court's decisions constitute "local law" that may or may not be consistent with the Restatements. Applying this standard, we conclude that (1) we

---

[9] We recognize that, in some of our earliest cases, we have cited to section 4 to apply Restatement provisions without first determining whether this Court agrees that the Restatement approach represents the sounder rule or is consistent with Virgin Islands jurisprudence and policy. *See, e.g., Williams v. United Corp.*, 50 V.I. 191, 195 n.3 (V.I. 2008). However, in none of those cases did the parties expressly request that this Court exercise its inherent power to adopt a different rule, and this Court is not inclined to do so *sua sponte* without receiving the benefit of briefing by the parties. *See Tigera Group, Inc. v. Commerce & Indus. Ins. Co.*, 753 F.Supp. 858, 860 n.1 (N.D. Cal. 1991).

Moreover, at the time these cases were decided, this Court had not yet issued its *In re People* opinion, and the Third Circuit had not yet issued *Pichardo* and *Lewis*. In other words, during the first two and a half years of this Court's existence, the issue of the extent to which this Court is required to follow the Third Circuit's prior interpretations of section 4 and other local Virgin Islands statutes remained an open question which had not been expressly considered by either court. Under these circumstances, fleeting references to section 4 in this Court's earliest opinions should not be construed as conclusively resolving the deeper issue of the relationship between section 4 and this Court's inherent authority to shape the common law in the Virgin Islands. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("We do not view these cases as controlling precedent on the applicability of the commerce clause to Guam. In those cases, this court simply assumed that the commerce clause applied, but the issue was never raised or discussed. Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." (citing *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37-38, 73 S. Ct. 67, 97 L. Ed. 54 (1952))).

will not follow the *Pynes* decision, (2) the majority of United States jurisdictions follow the Third Restatement and allow a lessor to be held strictly liable for injuries resulting from a defective product, and (3) rather than continue to apply the *Pynes* decision based on *stare decisis*[10] or some other doctrine, Virgin Islands local courts should apply sections 1 and 20 of the Third Restatement and allow lessors to be held strictly liable for injuries resulting from a defective product.

---

[10] *Stare decisis* "is not an inexorable command." *McDonald v. City of Chicago*, 561 U.S.\_\_\_, 130 S. Ct. 3020, 3063, 177 L. Ed. 2d 894 (2010) (Thomas, J., concurring) (quoting *Lawrence v. Texas*, 539 U.S. 558, 577, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003)). Indeed, as the Supreme Court of the United States has made clear, "[*s*]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) (citing *Vasquez v. Hillery*, 474 U.S. 254, 265-266, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986)). "Nevertheless, when governing decisions are unworkable or are badly reasoned," the Court "has never felt constrained to follow precedent." *Id.* (quoting *Smith v. Allwright*, 321 U.S. 649, 665, 64 S. Ct. 757, 88 L. Ed. 987 (1944)). This is so because *stare decisis* is "a principle of policy and not a mechanical formula of adherence . . . however . . . questionable, when such adherence involves collision with a . . . doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S. Ct. 444, 84 L. Ed. 604, 1940-1 C.B. 223 (1940). We agree, and therefore do not believe that *stare decisis* would require us to continue to adhere to *Pynes*, because we have concluded, after critically examining that decision, that holding lessors strictly liable consistent with the RESTATEMENT (THIRD) OF TORTS: Products Liability §§ 1 and 20 represents the sounder rule.