

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-15-1995

# Williams v Rene

Precedential or Non-Precedential:

Docket 95-7226

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Williams v Rene" (1995). *1995 Decisions.* Paper 289.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/289

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-7226

———————

ANTONIO WILLIAMS

V.

JOSEPH RENE; ESSO VIRGIN ISLANDS, INC.

Scott Drake; John Doe,
                    Third-party Defendants

Esso Virgin Islands, Inc., Appellant

———————

APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
Division of St. Croix
(D.C. No. 91-cv-00231)

———————

Argued August 16, 1995

Before:  STAPLETON, LEWIS and WEIS, Circuit Judges

Filed  November 15, l995

———————

Robert T. Lehman, Esquire (ARGUED)
Arthur H. Jones, Jr., Esquire
Archer & Greiner
A Professional Corporation
One Centennial Square
Haddonfield, New Jersey  08033

Douglas L. Capdeville, Esquire
2107 Company Street, Lot #4
Christiansted, St. Croix
U.S.A.  Virgin Islands  00820-4918

Attorneys for Appellant

Lee J. Rohn, Esquire (ARGUED)
Maurice J. Cusick, Esquire
Rohn & Cusick
1101 King Street

Christiansted, St. Croix
U.S.A. Virgin Islands 00820

Linda Morgan, Esquire
P.O. Box 3530
Christiansted, St. Croix
U.S.A. Virgin Islands 00820

Renee D. Dowling, Esquire
P.O. Box 1047
Christiansted, St. Croix
U.S.A. Virgin Islands 00821

Attorneys for Appellee

WEIS, Circuit Judge.

In this Virgin Islands automobile accident case, evidence that an employee was driving a company car for his own convenience, together with a presumption of vicarious liability on the part of the employer, raised a question for the jury to resolve. Because the trial court granted a partial judgment as a matter of law against the employer on the respondeat superior issue, we will reverse and remand for a new trial.

For guidance on the retrial, we note that an unsupported opinion by an actuarial expert on the plaintiff's future earnings should not be received into evidence. We also conclude that the failure of defense counsel to advise the plaintiff's lawyer of an interview with an attending physician is not an adequate ground to exclude that doctor's testimony.

Plaintiff Antonio Williams was injured on St. Croix, Virgin Islands on December 12, 1990 when his pickup truck collided with an automobile owned by defendant Esso and operated by Joseph Rene, one of its employees. Williams sued both Esso

2

and Rene in the District Court of the Virgin Islands. At the conclusion of the evidence at the trial, on the plaintiff's motion, the court dismissed Rene from the case. The jury then awarded plaintiff a verdict of $4.5 million against Esso. The district court denied Esso's post-trial motions. Williams v. Rene, 886 F. Supp. 1214 (D.V.I. 1995).

Esso had assigned the automobile in question to the position held by one of its employees, Helen Sia. In carrying out her duties as a sales representative, Sia traveled frequently to visit various customers in the Virgin Islands. Esso permitted her to take the company car home after work and to use it for personal matters.

Sia's office was located about a quarter of a mile from the St. Croix Airport Terminal and was separated from it by the "Esso Yard." On some occasions, she would drive from her home to the airport terminal to meet with customers. At other times, she would travel directly from her residence to her office. If it became necessary during the work day to go to the airport terminal, Sia would either walk, drive the company car, or be "shuttled" by another Esso employee who might be available.

On the evening of December 11, 1990, the day before the accident, Sia drove the company car to her home with a passenger, her co-employee Rene, whose own vehicle had broken down. When they arrived at Sia's residence, she turned the car over to Rene, who then drove it to his home, some distance away. The understanding was that Rene would return the automobile to Sia at her home the following morning. She would then drive to the

3

airport for a business appointment there, dropping Rene off at his job site.

Rene was a crew leader in the Esso group that refueled planes at the St. Croix Airport. He was not Sia's supervisor nor did she supervise him. No supervisory person authorized Rene to drive the car on this occasion.

The accident occurred not long after Rene left his home, between 6:45 a.m. and 7:00 a.m., and while he was en route to Sia's home. The record does not disclose when Sia and Rene were to report to work, but it may be assumed that the starting times were after the hour at which the accident occurred.

At the close of the evidence, the trial court granted the plaintiff's motion for a partial judgment as a matter of law, holding Esso responsible under respondeat superior principles. Plaintiff also moved to dismiss Rene as a defendant "conditioned on the granting of the motion for respondeat superior and . . . seek its damages solely from Esso as a result of its employee in the course and scope of his employment." That motion was also granted and the case went to the jury with Esso as the sole defendant.

Defendant appealed, asserting that the district court erred in granting judgment as a matter of law on the agency issue and in failing to grant a remittitur or order a new trial because of the excessiveness of the verdict.

## I.

The plaintiff's theory of liability against Esso is based on respondeat superior, that is, that an employer is

4

responsible for the negligence of its employees that occurs within the course and scope of their employment. The employer's liability is vicarious and secondary to that of the employee, which is primary. The relationship was explained in Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951): "[T]he person primarily liable is the employee or agent who committed the tort, and the employer or principal may recover indemnity from him for the damages which he [the employer] has been obliged to pay." Accord Sochanski v. Sears, Roebuck & Co., 689 F.2d 45, 50 (3d Cir. 1982); Tromza v. Tecumseh Prods. Co., 378 F.2d 601, 605 (3d Cir. 1967). The Restatement (Second) of Agency is in agreement. Section 401 comment (d) reads, "a servant who, while acting within the scope of employment, negligently injures a third person, although personally liable to such person, is also subject to liability to the principal if the principal is thereby required to pay damages." See also Restatement of Restitution § 96 (1937).

Throughout the litigation, the parties seemed to assume that the liability of Esso and Rene was joint and several. This misunderstanding of the fundamental nature of Rene's primary responsibility led to a number of errors during the proceedings. For example, in her opening remarks to the jury, the plaintiff's counsel said ". . . if Mr. Rene was operating that vehicle in the course and scope of his employment, then his employer is the one who's responsible to pay the damages and that's Esso. And the law says if Mr. Rene was not in the course and scope of his employment, then Mr. Rene is liable for those damages."

5

These comments, of course, are a misstatement of the law. Rene, as the primary tortfeasor, would be liable in any event for his negligence in causing the accident without regard to whether Esso was secondarily liable. Esso would be responsible only if Rene were negligent and his conduct occurred during the course and scope of his employment. Esso's liability would be vicarious only, but Rene's conduct would be the sole, active negligence that caused the accident.

We turn then to the scope of employment issue. Because the Restatements furnish the guiding common law in the Virgin Islands, we look to sections 228 and 229 of the Restatement (Second) of Agency. V.I. Code Ann. tit. 1, § 4 (1967).

Restatement section 228(1)(a),(b) provides that conduct of a servant is within the scope of employment if it is the kind he is employed to perform and it occurs substantially within the authorized time and space limits. Section 228(2) states that conduct is not within the scope of employment if it is "too little actuated by a purpose to serve the master."

Comment d to section 229 is particularly pertinent here. It discusses the "going to and from work" situation and notes the importance of ascertaining "whether the vehicle is supplied primarily for the purpose of assisting the [employer's] work, or for the purpose of assisting the employee to perform what is essentially his own job of getting to . . . work." Simply because the employer provides a vehicle "does not establish that those who avail themselves of it are within the scope of

6

employment while upon it, especially if the use is merely casual." Id.

The general rule is that employees are not within the scope of their employment while traveling to and returning from work. That principle was recognized by the Territorial Court of the Virgin Islands in McFarlane v. Jones Masonry, 25 V.I. 43 (Terr. Ct. 1990). See also Charles v. Mitchell, 21 V.I. 478 (D.V.I. 1985). There may be some circumstances that take a case out of the general rule, for example, when there are express instructions by the employer or when the trip serves some specific purpose of the employer other than merely providing for the presence of the employee at the work place. See, e.g., Caldwell v. A.R.B., Inc., 222 Cal. Rptr. 494, 498 (Cal. Ct. App. 1986).

In Pacheco v. United States, 409 F.2d 1234, 1237 (3d Cir. 1969), we held that, generally speaking, proof of a defendant's ownership of a vehicle and of its operation at the time of the accident by an agent of the defendant creates a presumption that the driver was acting within the scope of employment. As we indicated in the opinion, that presumption is rebuttable. Id.

Federal Rule of Evidence 302 provides that the effect of a presumption is determined by state law whenever it supplies the rule of decision on a claim. Assuming, without deciding, that the Virgin Islands statute on presumptions, V.I. Code Ann. tit. 5, § 812 (1967), governs here, Esso had the burden of

7

proving that Rene was not acting within the scope of his employment once plaintiff established the Pacheco presumption.

The standard of review for the grant of a motion for judgment as a matter of law varies according to whether the moving party has the burden of proof. Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171, 1177 (3d Cir. 1976). Because Esso had the burden of proof on the respondeat superior issue, the grant of the plaintiff's motion can be sustained "only if, viewing the evidence in the light most favorable to the non-moving party, there is no question of material fact for the jury, and any verdict other than the one directed would be erroneous under the governing law." Tait v. Armor Elevator Co., 958 F.2d 563, 569 (3d Cir. 1992) (quoting Macleary v. Hines, 817 F.2d 1081, 1083 (3d Cir. 1987)).

The record in this case contains ample evidence to rebut a Pacheco presumption. Rene's employment at the airport was not the type of job that required travel by automobile over the Island. Rene left his home between 6:45 and 7:00 a.m. The collision occurred shortly thereafter, apparently before he was to report for work at the airport. At the time of the collision, he was en route to Sia's home to turn the car over to her. Sia, a co-employee, had furnished the car as a favor to Rene to get him from her home to his and back. No one in a supervisory position at Esso had authorized or directed Rene to use the car on the day of the accident, or to pick up Sia.

Plaintiff produced some evidence that, at various times in the past, some of Esso's employees had been authorized during

8

working hours to drive to employees' homes in order to bring them to the work place. That testimony was general and did not establish a clear policy, nor did it demonstrate that Rene had been directed to bring Sia to work. In this context, it is important to note, as the Restatement points out, the distinction between an employer's permission to drive a company car for personal errands and directions for the use of the automobile on the employer's business. The mere fact that Esso had allowed its employees to use its vehicles to bring other employees to work in the past did not establish that Rene was within the scope of employment.

Although plaintiff was entitled to a <u>Pacheco</u> presumption, there was adequate evidence to support a finding that Rene was using the automobile for his own personal convenience and not on the business of Esso. Consequently, the <u>respondeat</u> <u>superior</u> question should have been submitted to the jury. It was error, therefore, to grant judgment against Esso on the vicarious liability issue. Accordingly, a new trial must be granted.

At this juncture, the question arises whether the new trial should be granted only as to liability without vacating the damage award. In <u>Gasoline Prods. Co. v. Champlin Refining Co.</u>, 283 U.S. 494 (1931), the Supreme Court held that even if error as to one issue requires a new trial, it need not include other separate points that were properly decided. If the issue of damages, however, is so intertwined with liability that one cannot be submitted to the jury independently of the other

9

without confusion and uncertainty, then a new trial must extend to all issues. Id. at 500-01. Accord Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1040 (3d Cir. 1988); Vizzini v. Ford Motor Co., 569 F.2d 754, 759 (3d Cir. 1977); see also Fed. R. Civ. P. 59(a).

This appeal presents a unique circumstance that has a bearing on the appropriate scope of a new trial. The district court granted the plaintiff's request to dismiss defendant Rene just before the case was submitted to the jury. The dismissal was conditional, that is, dependent on a judgment as a matter of law against Esso on the respondeat superior issue. The situation thus created may fairly be said to come within the purview of a comment in a leading treatise: "When fewer than all defendants are dismissed voluntarily, . . . the court retains plenary power to reinstate those defendants until the claim has been adjudicated as to the remaining defendants." 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 at 323 (1995).

Because the respondeat superior ruling must be set aside, so too must Rene's dismissal be vacated. The district court acquiesced in the limited effect of the plaintiff's motion, and it would be inappropriate, as well as unfair, to hold at this point that Rene would no longer be a party. We therefore direct that Rene be reinstated as a defendant.

Having concluded that Rene will be a party on the retrial, we must consider what effect that factor will have on the remaining issues. It is significant that the jury reached

10

its verdict on negligence and damages at a time when Rene was no longer a defendant in the case. On retrial, it may be that the jury will exonerate both Esso and Rene, or perhaps, leave Rene to bear full responsibility for the plaintiff's damages. In view of those possibilities, it would be inequitable to have Rene bound by a negligence finding or a damages assessment that a jury might not have rendered had it been aware that he was to be the sole, primarily-responsible defendant.

We need not blind ourselves to the fact that juries are apt to assess larger verdicts against major corporations than against individuals. Indeed, the plaintiff's ploy in dismissing Rene from the suit was clearly intended to focus the jury's attention on the deep pocket defendant, Esso. In the circumstances here, the new trial must extend to all parties and to damages as well as liability.

## II.

Because we have decided that a new trial must include damages, we need not discuss at any length the defendant's contention that the verdict was excessive. However, guidance on some matters that may recur on the retrial may be helpful.

About a month and a half after the accident, plaintiff returned to his job as a first class mechanic at the Virgin Islands Water and Power Authority. He continued to work there until shortly before the trial began. In early 1992, plaintiff applied for, and received, a promotion to preventive maintenance supervisory foreman, a position that paid approximately $44,000 per year. That was a substantial increase over the $30,000 he

11

received in 1991. His earnings in 1992 were approximately $35,000, but the record does not disclose what part of that sum included the higher pay for the supervisory position.

At trial, the plaintiff's actuarial expert, assuming plaintiff would be permanently disabled, projected his gross loss of income to be approximately $2 million. This calculation took into account both anticipated earnings and projected inflation to arrive at an annual increase of 5% over the plaintiff's current earnings. The witness reduced the $2 million figure to its present value of approximately $750,000.

In responding to a question from the plaintiff's counsel on redirect examination, the expert said that, based on actual earnings from 1991 through 1993, the average increase in income was 16.1% annually, more than three times higher than the 5% figure that he had used in projecting the gross earnings loss. Counsel then stated: "So instead of two million, you would have a number of six million dollars, is that right?" The expert replied, "Yes, ma'am, or close to it."

Two serious deficiencies undermine that testimony of counsel and expert. There was no evidence on which the witness could properly base an opinion that the plaintiff's gross earnings would triple in the remaining seventeen years of his service before retirement. The record contains no data on the salary scales at the Water and Power Authority and nothing to indicate that the plaintiff's experience and training would qualify him for positions higher than the one he held at time of trial. See Benjamin v. Peter's Farm Condominium Owners Ass'n,

12

820 F.2d 640, 642 (3d Cir. 1987) (requiring evidence to justify prospective earnings); <u>Gumbs v. International Harvester, Inc.</u>, 718 F.2d 88, 98 (3d Cir. 1983) (same). The 16% average increase primarily was the result of the warping of the earnings record brought about by the substantial promotion from mechanic to supervisory foreman. Moreover, at no time was the $6 million projection reduced to present worth, an obligation that plaintiff must shoulder. <u>See</u> <u>Gorniak v. National R.R. Passenger Corp.</u>, 889 F.2d 481, 486 (3d Cir. 1989).

The $6 million figure apparently had an appreciable influence on the size of the verdict. In his post-trial opinion reviewing the damage award, the trial judge commented: "Plaintiff presented evidence . . . that Mr. Williams' economic damages alone might be estimated at almost 6 million dollars." <u>Williams</u>, 886 F.Supp. at 1239. "If the jury believed this testimony, then the entire $4.5 million dollar award is actually lower than the evidence revealed in the record of Mr. Williams' maximum economic damages. If they believed this testimony, it is possible that they came up with the $4.5 million award without even considering any damages for pain and suffering. It is quite likely that the jury did believe plaintiff's evidence since it was essentially unrebutted by the defendants." <u>Id</u>. at 1241.[1]

---

[1] Because he concluded that the loss of income made up such a large part of the award, the trial judge did not deem it necessary to review other cases involving similar injuries to determine the reasonableness of amounts awarded for pain and suffering. <u>See</u> <u>Gumbs v. Pueblo Int'l, Inc.</u>, 823 F.2d 768 (3d Cir. 1987); <u>Couch v. St. Croix Marine Inc.</u>, 667 F.Supp. 223 (D.V.I. 1987); <u>Erysthee v. El Nuevo Lirio Grocery</u>, 25 V.I. 307 (D.V.I. App. Div. 1990). Such comparisons do provide some

Because of its misleading character, such unsupported and speculative expert testimony should not be received into evidence on the retrial.

Another ruling that requires some comment was the exclusion of the testimony of Dr. Walter Pedersen, the plaintiff's attending physician. Before the trial commenced, the court ruled in limine that defendant could not call the physician as a witness. Dr. Pedersen had treated plaintiff after the accident and submitted a report to the plaintiff's attorney. She, in turn, sent a copy to the defendant's counsel. About two years later, in the final pretrial order, plaintiff submitted a list of witnesses he proposed to call. Dr. Pedersen's name was not included. The defense, however, as part of its pretrial submission, listed Dr. Pedersen as a fact witness in its case.

After receiving the plaintiff's witness list, the defendant's counsel met with Dr. Pedersen. Plaintiff had previously executed a broadly-worded medical information release that would permit such an interview. Defense counsel did not tell the plaintiff's lawyer of his intention to discuss the plaintiff's injury with the physician.

The trial court based its exclusionary ruling on three grounds:

(1)  despite local practice, defense counsel had failed to notify the plaintiff's lawyer of the interview;

---

guidance for courts in considering whether a verdict is excessive and we commend the use of such data.

14

(2)  the defense proposed to elicit expert opinion evidence from Dr. Pedersen although he had been listed in its pretrial submission as a fact witness; and

(3)  Dr. Pedersen had not submitted a report of his opinion to plaintiff as required by Fed. R. Civ. P. 26(b)(4)(B).

In DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1201-02 (3d Cir. 1978), we discussed the factors that must be assessed in excluding a witness's testimony because of failure to comply with pretrial notice requirements:

1.  the prejudice or surprise in fact to the opposing party;

2.  the ability of that party to cure the prejudice;

3.  the extent to which the orderly and efficient trial of the case would be disrupted; and

4.  bad faith in failing to comply with the court's order.

In addition, the significance of the practical importance of the excluded evidence must be taken into consideration. Id. at 202. See also Johnson v. H.K. Webster, Inc., 775 F.2d 1, 8 (1st Cir. 1985); Stich v. United States, 730 F.2d 115, 118 (3d Cir. 1984).

We find no evidence of surprise to plaintiff in the rather unusual situation present here.  Plaintiff had previously obtained a report from Dr. Pedersen, and we may assume that he had been interviewed by the plaintiff's counsel.  There was no indication that the trial would have been disrupted by receiving the physician's testimony.

15

The trial court apparently felt bound by a local policy articulated by the Territorial Court in Chase v. People's Drug Store, 24 V.I. 183, 187 (Terr. Ct. 1989), which required the plaintiff's counsel to be notified before a defense lawyer interviewed an attending physician. Dismissing the written authorization to release medical information, the district court noted that despite similar waivers in Chase, the Territorial Court adopted the practice of a New Jersey case, Stempler v. Speidell, 495 A.2d 857 (N.J. 1985). Stempler required prior notification to the plaintiff's counsel before defendant could interview an attending physician.

We have reservations about the restrictions imposed in Stempler and believe the better approach is expressed in International Business Mach. Corp. v. Edelstein, 526 F.2d 37 (2d Cir. 1975). There, the court referred to "time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." Id. at 42. We are concerned that the Chase holding hinders settlement negotiations and trial preparation by restricting the gathering of relevant evidence in an informal fashion, thus requiring the more expensive and time-consuming procedures of a formal deposition.

Furthermore, by putting his physical condition at issue, plaintiff waived the physician-patient privilege with respect to the injuries claimed to have been incurred in the

16

accident.  <u>See</u> 5 V.I. Code Ann. tit. 5, § 855(4) (1967); Fed. R. Evid. 501.

In any event, even failure to follow the <u>Chase</u> procedure would not provide sufficient cause to bar Dr. Pedersen's testimony in this case where plaintiff had received a report from the physician and had decided not to call him as a witness.  The 1970 Advisory Committee report to Fed. R. Civ. P. 26(b)(4) noted that for discovery purposes, an expert witness who was an actor or viewer of the occurrence that is the subject matter of the lawsuit should be treated "as an ordinary witness." That same viewpoint is applicable here in the trial setting.

The significance of Dr. Pedersen's testimony is apparent from the dispute over whether the plaintiff's back condition was caused solely by the automobile accident in 1990. Our review of the trial record reveals references to previous injuries to the plaintiff's lower back in 1969, 1975, 1978, 1980, 1981, 1982 (two incidents), 1983, and 1986. In 1990, shortly before the accident in this suit, he also had an x-ray of the lower back.

Dr. Pedersen treated plaintiff for some of these previous injuries as well as those incurred in the auto accident in December of 1990. The extent of the plaintiff's disability caused by the pre-existing injuries and that portion attributable to the Rene collision are crucial in the determination of a proper damage award. It seems likely that Dr. Pedersen's testimony would be helpful to making an evaluation on causation, and he should be permitted to testify at the retrial. Of course, the trial court may require the defense to produce, in advance of trial, a report by Dr. Pedersen of any additional matters, including opinions that he intends to testify about, that had not been included in any previous reports to, or interviews with, the plaintiff's counsel.

Because other evidentiary matters raised by the defense may be obviated on the retrial, we do not address nor decide them at this juncture.

The judgment of the district court will be reversed and the case remanded for a new trial. Costs to abide the event.

_____