## AMINATA NICHOLAS, Plaintiff
## v.
## SAUL DAMIAN-ROJAS and GEC, L.L.C., Defendants

Case No. SX-10-CV-166

Superior Court of the Virgin Islands

Division of St. Croix

January 27, 2015

124

BRADY, *Judge*

## MEMORANDUM OPINION

(January 27, 2015)

THIS MATTER is before the Court on Defendant GEC, L.L.C.'s Motion to Dismiss Vicarious Liability Claim or in the Alternative Motion for Summary Judgment ("Motion for Summary Judgment"), filed September 2, 2014; Plaintiff Aminata Nicholas's Opposition thereto ("Plaintiff's Opposition"), filed October 22, 2014; and Defendant GEC's Reply ("GEC's Reply"), filed November 5, 2014. GEC's Motion for Summary Judgment will be granted.

Also before the Court is Plaintiff Nicholas's Motion to Amend the First Amended Complaint ("Motion to Amend"), filed October 22, 2014; GEC's Opposition, filed November 5, 2014; Defendant Damian-Rojas's Opposition, filed November 5, 2014; and Plaintiff's Reply, filed November 19, 2014.[1] Because the Court finds that Plaintiff's proposed amendments are futile, the Motion to Amend will be denied.

## BACKGROUND

This action arose from a February 21, 2010 motor vehicle accident involving Plaintiff and Defendant Saul Damian-Rojas, an employee of Defendant GEC. First Amended Complaint, at ¶ 10. At the time of the accident, Damian-Rojas was driving a 2003 Jeep Wrangler owned by GEC. *Id.* at ¶ 7. Plaintiff alleges that Damian-Rojas was negligent and is liable as at the time of the accident, he operated the vehicle while intoxicated, failed to keep the vehicle left, and collided with Plaintiff's 2009 Jeep Liberty, injuring all four passengers inside. *Id.* at ¶ 10. Plaintiff also alleges the independent negligence of GEC in that GEC negligently entrusted its vehicle to Damian-Rojas when it knew or should have known that Damian-Rojas was not a responsible driver and would drink

---

[1] Also before the Court is Defendant Saul Damian-Rojas's Motion Requesting New Scheduling Order, filed November 13, 2014. This Motion will be granted in part by separate Order entered this date.

and drive.[2] Plaintiff further alleges that GEC is liable because the accident occurred while Damian-Rojas was acting in the course and scope of his employment with GEC. *Id.* at ¶¶ 8-9. In response to GEC's Motion for Summary Judgment, Plaintiff Nicholas filed her Motion to Amend.[3]

## DISCUSSION

Plaintiff's First Amended Complaint ("Complaint") presents a claim of *respondeat superior*, (Complaint, at ¶¶ 7-8), wherein she alleges that (1) Damian-Rojas was in the course and scope of his employment with GEC at the time of the accident; and (2) GEC is liable for Damian-Rojas' accident with Plaintiff even if he acted outside the scope of his employment. Plaintiff's Reply, at 8-15.

### I. Legal Standard

Defendant GEC asks this Court to dismiss Plaintiff's action against it, or in the alternative, to grant summary judgment in its favor. "When presented with a motion to dismiss, or in the alternative, for summary judgment, the court retains discretion to determine which path to take." *Sprauve v. CBI Acquisitions, LLC*, Civ. No. 09-165, 2010 U.S. Dist. LEXIS 92604, *12 (D.V.I. Sept. 2, 2010) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). If a court only considers " 'allegations contained in the complaint, exhibits attached to the complaint and matters of public record,' the standard of review applicable to a motion to dismiss is required." *Id.* (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998)). However, when the court considers matters outside the pleading and public record, "the court must decide the motion as one for summary judgment in accord with Rule 56 and the required notice to the parties under Rule 12(d)."[4] *Id.* (*citing*

---

[2] Plaintiff's negligent entrustment claim was dismissed by Order filed December 27, 2013.

[3] Original Plaintiffs Lucile Nicholas and Vernessa Nicholas, individually and as Next Friend of Cailyn Martins, and Defendants GEC and Damian-Rojas jointly filed a Stipulation for Dismissal on November 24, 2014, dismissing with prejudice all claims of those named Plaintiffs. The Court's Order of Dismissal as to those parties is entered concurrently with this Order, such that the only claim now pending in this case is that filed by Aminata Nicholas. The caption of the case is amended to reflect that development.

[4] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material

*Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Because this Court will decide GEC's Motion for Summary Judgment based upon the entire record of this case, the summary judgment standard will be used.

A moving party will prevail on a motion for summary judgment where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), applicable to this Court pursuant to SUPER. CT. R. 7; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The Court must determine whether there exists a dispute as to a material fact, the determination of which will affect the outcome of the action under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Such a dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* In analyzing the evidence, the Court must consider the pleadings and full factual record, drawing all justifiable inferences in favor of the nonmoving party, to determine whether the movant has met its burden of showing that there is no unresolved genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

A party opposing a motion for summary judgment may not rest upon the allegations or denials within its pleadings, but must set forth specific facts showing that there is a genuine issue for trial, such that the jury or judge as fact finder could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248. The non-moving party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . ." FED. R. CIV. P. 56(c)(1)(A); *see also Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008), citing Rule 56(e) prior to its 2010 amendment. "As to materiality, only those facts that 'might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Id.* (quoting *Anderson*, 477 U.S. at 248).

that is pertinent to the motion." FED. R. CIV. P. 12(d), applicable to this Court pursuant to SUPER. CT. R. 7.

## II. Plaintiff's *respondeat superior* claim against GEC

### A. Banks Analysis

██ There is no binding common law rule in the Virgin Islands concerning the elements necessary to maintain a claim that an employer is liable for the actionable negligence of its employee under the doctrine of *respondeat superior*, nor is there an applicable local statute. In the absence of binding Virgin Islands law, it is necessary to conduct a *Banks* analysis to determine the appropriate common law rule to apply to Plaintiff's claim. *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967, 977-78 (V.I. 2011); *see also Gov't of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014).

The Court considers three factors in deciding what common law rule to adopt as the applicable standard for an issue in dispute: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Gov't v. Connor*, 60 V.I. at 600, quoting *Simon v. Joseph*, 59 V.I. 611, 622 (V.I. 2013).

██ In the Virgin Islands, the RESTATEMENT (SECOND) OF AGENCY § 219 ("Restatement § 219") has been applied numerous times in courts throughout the Territory. *See Bell v. University of the Virgin Islands*, 45 V.I. 407, 412 (D.V.I. 2003) (citing *Chase v. Virgin Islands Port Authority*, 3 F. Supp. 2d 641, 38 V.I. 417, 418-19 (D.V.I. 1998), where "the Court determined that an employer is liable if and only if . . . the employee's tort encompasses the type of action the employee was hired to perform . . ."); *see also Warner v. Kmart*, 2009 U.S. Dist. LEXIS 44502 (D.V.I. May 27, 2009); *Walker v. V.I. Waste Mngmt. Auth.*, 62 V.I. 53 (V.I. Super. 2014). While some courts have applied the RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006) (*see Thomas v. Roberson*, 58 V.I. 662, 674-75 (D.V.I. 2013)), this substantively similar newer provision has not been widely adopted, and the Court finds that Restatement § 219 is the rule that has been generally adopted by Virgin Islands courts.[5]

---

[5] Restatement § 219 states:

> (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

It also appears that rules of employer vicarious liability as defined in Restatement § 219 constitute the majority rule applied by courts across the United States. *See Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1198 (Alaska 2009); *Doe v. Sipper*, 821 F. Supp. 2d 384, 388 (D.D.C. 2011); *Nichols v. Frank*, 771 F. Supp. 1075, 1078 (D. Or. 1991) *aff'd*, 42 F.3d 503 (9th Cir. 1994); *Petersen v. ProxyMed, Inc.*, 617 F. Supp. 2d 835, 847 (D.S.D. 2008); *Johnson v. Cmty. Nursing Servs.*, 985 F. Supp. 1321, 1327 (D. Utah 1997); *Doe v. Forrest*, 176 Vt. 476, 853 A.2d 48, 57 (2004); *Davis v. Am. Soc'y of Civil Engineers*, 330 F. Supp. 2d 647, 654 (E.D. Va. 2004).

■ The Court finds that the substantive provisions of Restatement § 219 represent the soundest rule for the Virgin Islands, reflecting commonly understood legal principles that do not contradict Virgin Islands common law. Therefore, looking at the portions of § 219 relevant to this case, GEC's liability for the accident under a *respondeat superior* theory depends upon whether Damian-Rojas was (1) in the course and scope of his employment, or; (2) whether GEC was negligent or reckless. *See Williams v. Rene*, 72 F.3d 1096, 33 V.I. 297, 301 (3d Cir. 1995); Restatement § 219(2)(b).[6] Employee conduct is "within the scope of employment if it is the kind he is employed to perform and it occurs

---

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

 (a) the master intended the conduct or the consequences, or

 (b) the master was negligent or reckless, or

 (c) the conduct violated a non-delegable duty of the master, or

 (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Only the recent *Walker* case engaged in a *Banks* analysis and adopted the provisions of Restatement § 219 as constituting the common law of the Virgin Islands. Prior cases explicitly or implicitly relied upon 1 V.I.C § 4, now effectively repealed, such that courts of the Virgin Islands shall no longer "automatically and mechanistically" follow the provisions of the Restatements. *Banks*, 55 V.I. at 979.

[6] *Williams* predates the Legislature's 2004 amendment of 4 V.I.C § 21 *et seq.*, which established the Supreme Court of the Virgin Islands as "the supreme judicial power of the Territory," effectively repealing 1 V.I.C § 4. *Banks*, 55 V.I. at 979. Because the Third Circuit's analysis in *Williams* was based upon the application of the RESTATEMENT (SECOND) OF AGENCY pursuant to 1 V.I.C. § 4, that decision does not constitute binding authority on this Court. *See Gov't v. Connor*, 60 V.I. at 604, n.1.

substantially within the authorized time and space limits." *Williams*, 72 F.3d at 1100 (citing RESTATEMENT (SECOND) AGENCY § 228(l)(a)-(b)).

## B. Pacheco presumption and its effect

Plaintiff argues that "generally speaking, proof of a defendant's ownership of a vehicle and of its operation at the time of the accident by an agent of the defendant creates a presumption that the driver was acting within the scope of employment." Plaintiff's Reply, at 8 (quoting *Williams v. Rene*, 72 F.3d 1096, 1100, 33 V.I. 297 (3d Cir. 1995), citing *Pacheco v. United States*, 409 F.2d 1234, 1237, 7 V.I. 213 (3d Cir. 1969). That presumption is rebuttable. *Williams v. Rene*, 72 F.3d at 1100. However, the analysis of the Third Circuit in *Williams* was based upon its assumption of the applicability of 5 V.I.C. § 812, a statute that was later repealed on April 7, 2010 by Act No. 7161 wherein the Uniform Rules of Evidence were replaced by the Federal Rules of Evidence.[7] Therefore, the Court will conduct a *Banks* analysis to determine whether such a presumption should be adopted in the Virgin Islands, and if so, what effect such a presumption should have.

### i. The presumption

 The Court finds that it is a widely held principle of common law that proof of a defendant's ownership of a vehicle and of its operation at the time of the accident by its employee creates a rebuttable presumption that the employee was acting within the scope of employment at the time of the accident.[8] Further, the Court finds that such a presumption is

---

[7] "Assuming, without deciding, that the Virgin Islands statute on presumptions, V.I. CODE ANN. tit. 5, § 812 (1967), governs here, [plaintiff] had the burden of proving that [defendant] was not acting within the scope of his employment once plaintiff established the *Pacheco* presumption." *Williams*, 72 F.3d at 1100.

[8] A sampling of case law from states using this common law rule: Alabama *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45 (Ala. 1995); Arkansas *Nipper v. Brandon Co.*, 262 Ark. 17, 21, 553 S.W.2d 27 (1977); Florida *Crowell v. Clay Hyder Trucking Lines, Inc.*, 700 So. 2d 120, 124 (Fla. Dist. Ct. App. 1997); Georgia *Farzaneh v. Merit Const. Co., Inc.*, 309 Ga. App. 637, 710 S.E.2d 839 (2011); Illinois *Giannoble v. P & M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 599 N.E.2d 1183, 1187, 175 Ill. Dec. 169 (1992); Maryland *Edwards v. Mayor & City Council of Baltimore*, 176 Md. App. 446, 933 A.2d 495, 504 (2007); Missouri *Ewing-Cage v. Quality Prods., Inc.*, 18 S.W. 3d 147, 150 (Mo. Ct. App. 2000); New Jersey *Jeter v. Stevenson*, 284 N.J. Super. 229, 664 A.2d 952, 954 (App. Div. 1995); Texas *Mayes v. Goodyear Tire & Rubber Co.*, 144 S.W.3d 50, 56 (Tex. App. 2004) *rev'd on other grounds*,

justified and supported by "mingled elements of logic, experience and policy." *Pacheco v. United States*, 409 F.2d 1234, 1237, 7 V.I. 213 (3d Cir. 1969).[9] Further, such a presumption appears to have remained the controlling law in the Virgin Islands.[10] Therefore, the Court adopts as the soundest rule for the Virgin Islands that proof of a defendant's ownership of a vehicle and of its operation at the time of the accident by an agent of the defendant creates a presumption that the driver was acting within the scope of employment.

### ii. The effect of the presumption

After determining that such a presumption applies, the Court must still determine the effect of that presumption. "The repeal of [5 V.I.C. § 812] raises a question as to the current law in the Virgin Islands on the effect of presumptions." *Gumbs-Heyliger v. CMW & Associates Corp.*, No. CV 2012-00078, 2014 U.S. Dist. LEXIS 160451, *16 (D.V.I. Nov. 13, 2014).

Following the repeal of 5 V.I.C. § 812, Federal Rules of Evidence 301 and 302 govern presumptions in the Virgin Islands. *Id.* Rule 302 provides that "state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Because *respondeat superior* claims are based upon Virgin Islands law, pursuant to Rule 302, Virgin Islands law on the effect of presumptions applies. However, following the repeal of 5 V.I.C. § 812, no statute governing the effect of presumptions exists in the Virgin Islands, and the Supreme Court

---

236 S.W.3d 754 (Tex. 2007). In some states the presumption is statutory. *See* Connecticut *Engram v. Kraft*, 83 Conn. App. 782, 851 A.2d 363, 365 (2004); North Carolina, *Winston v. Brodie*, 134 N.C. App. 260, 517 S.E.2d 203, 207 (1999); Tennessee, *Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 765 (Tenn. Ct. App. 1997).

[9] The *Pacheco* court outlined the general ideas supporting such a presumption thusly:

> The law raises the presumption in automobile accident cases such as this, in part at least because common experience has demonstrated the probability that a defendant's business vehicle which is driven by its employee is being operated at the time within the course and scope of his employment. Public policy contributes to this result in these cases which Mr. Justice Brandeis more than thirty-five years ago described as dealing with "the menacing problem of practical responsibility for motor accidents" and the "inadequacy (of the) * * * doctrine (of principal and agent) to cope with (it)."

*Pacheco v. United States*, 409 F.2d 1234, 1237-38, 7 V.I. 213 (3d Cir. 1969) (alterations in original) (quoting *Young v. Masci*, 289 U.S. 253, 259, 53 S. Ct. 599, 77 L. Ed. 1158 (1953)).

[10] *See Williams v. Rene*, 886 F. Supp. 1214, 1221, 32 V.I. 216 (D.V.I. 1995) *rev'd on other grounds*, 72 F.3d 1096, 33 V.I. 297 (3d Cir. 1995).

of the Virgin Islands has not spoken on the issue. In the absence of binding precedent on this common law rule, the Court again engages in a *Banks* analysis to determine what effect that presumption shall have. *See Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014); *Gov't v. Connor*, 60 V.I. at 603.

■ As discussed by the District Court in *Gumbs-Heyliger*, in a *Banks* analysis on the issue of the current effect of presumptions in the Virgin Islands, there "are two prevailing schools of thought governing the effect of presumptions in civil cases — the Thayer 'bursting bubble' theory and the Morgan theory." *Gumbs-Heyliger v. CMW & Associates Corp.*, 2014 U.S. Dist. LEXIS 160451 at *21 (citing *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 841-42 (3rd Cir. 1994)). In providing persuasive (but not binding) authority, the District Court accurately elucidated the two theories thusly:

> Under the Thayer theory, the only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. If evidence is produced by the party against whom the presumption operates, the presumption disappears. The Third Circuit, as well as other courts, has interpreted Federal Rule of Evidence 301 to express the Thayer "bubble bursting" theory of presumptions. Under the Morgan theory, both the burden of production and the burden of persuasion shift to the party against whom the presumption operates. It has been stated that the Morgan theory applies in particular to statutory presumptions created for reasons of social policy. The Thayer theory has been criticized by proponents of the Morgan theory on the ground that it grants presumptions too weak an effect, especially when substantial policy considerations underlie a presumption.

*Id*. 2014 U.S. Dist. LEXIS 160451 at *21 (internal quotations and citations omitted).

As noted in *Gumbs-Heyliger*, the states are split as to which theory to adopt, with some states adopting a hybrid of both theories, and others adopting a theory based upon the reasons behind the creation of the individual presumption, such as to further a preferred social policy.[11] *Id*. 2014 U.S. Dist. LEXIS 160451 at *22 (collecting cases).

---

[11] In *Gumbs-Heyliger*, the District Court applied the Morgan theory "to presumptions established to further a particular social policy objective." *Id*. 2014 U.S. Dist. LEXIS 160451

Public policy is one of the primary reasons for the existence of the *Pacheco* presumption,[12] and courts tend to adopt the Morgan theory when the furtherance of public policy considerations is a reason for the presumption's existence.[13] Further, the previously adopted rule in the Virgin Islands followed the more robust Morgan theory.[14]

■ Therefore, the Court finds that the majority of jurisdictions adopt the Morgan theory, where the presumption was created, at least in part, to further a preferred public policy; that the Morgan theory has been previously adopted in Virgin Islands cases (*see both Pacheco* and *Gumbs-Heyliger*); and most importantly, that the Morgan theory is the best rule for the Virgin Islands in applying the employer-owned vehicle presumption in *respondeat superior* cases, as the Thayer "bubble bursting" theory is too weak, rendering the presumption inadequate to perform its intended function.[15] Accordingly, the Court will adopt and apply the theory to the presumption in this case.

### III. Drawing all justifiable inferences in favor of Plaintiff, no genuine issues of material fact exist and GEC is entitled to judgment as a matter of law

*A. Plaintiff's relevant factual allegations are for the purpose of GEC's Motion for Summary Judgment presumed true, as follows:*

1. On February 21, 2010, Damian-Rojas went to Paulina bar before picking up a friend and driving to Divi Casino, where he drank one beer. Plaintiff's Statement of Facts, at ¶ 19.

2. Damian-Rojas and his friend left the casino and, while driving back on South Shore Road, came around a corner, crossed into the on-

---

at *31. However, that case dealt with a Wrongful Discharge Act claim. *See* 24 V.I.C. § 76. Here, where the Court considers a common law presumption, there is no legislative social policy objective to rely upon. However, the Court notes that *Pacheco* adopted the presumption in part because "[p]ublic policy contributes to this result" and agrees with that assessment as the primary motivation for the common law adoption of this presumption.

[12] *Pacheco v. United States*, 409 F.2d at 1237-38.

[13] *See Gumbs-Heyliger*, 2014 U.S. Dist. LEXIS 160451 at *26.

[14] As stated in *Pacheco*, "the presumption will continue to have existence even in the face of any evidence which the [defendant] may produce contradicting the factual elements from which the presumption arose." *Pacheco v. United States*, 409 F.2d at 1238. In so stating, *Pacheco* appears to reject the Thayer "bubble bursting" theory.

[15] *See Gumbs-Heyliger*, 2014 U.S. Dist. LEXIS 160451 at *21 and quoted language, above.

coming lane, and collided with Plaintiff's car, causing her severe injury and causing severe damage to Plaintiff's vehicle. *Id.* at ¶¶ 19-20.

3. At the time of the accident, Damien-Rojas was an employee of GEC, temporarily working on St. Croix, and was driving a car entrusted to him by GEC as part of the terms of his employment. *Id.* at ¶¶ 1, 4.

4. GEC entrusted the vehicle to Damien-Rojas because he was on-call 24 hours a day. GEC paid for the gas for the vehicle, and did not impose on Damien-Rojas any restrictions on his use of the vehicle. *Id.* at ¶ 5.

5. GEC did not ask Damien-Rojas for proof of a valid driver's license, about his driving record, or about whether or not he was insured, nor did GEC representatives check his driving record. *Id.* at ¶¶ 8, 15.

6. When GEC provided Damien-Rojas with the vehicle, GEC had no knowledge of his driving ability. *Id.* at ¶ 16.

7. Immediately after the accident, Damien-Rojas called his supervisor at GEC, Hector Quinones, who came to the scene to help talk to the police and to arrange for the vehicle to be towed away. *Id.* at ¶ 22.

### B. Plaintiff is entitled to the Pacheco presumption

There is no dispute between the parties that Damian-Rojas was both an employee of GEC at the time of the accident and driving a vehicle owned by GEC at the time of the accident. Therefore, as discussed in the above *Banks* analysis, Plaintiff is entitled to the rebuttable presumption that Damien-Rojas was acting in the course and scope of his employment at the time of the accident. Further, because the Court's *Banks* analysis also found that the Morgan theory of presumption, the burden of production and burden of persuasion shifts to GEC to rebut that presumption.

### C. GEC has successfully rebutted the Pacheco presumption

■ Considering the pleadings and full factual record, while drawing all justifiable inferences in favor of Plaintiff, GEC has rebutted the *Pacheco* presumption in this case, in that under no interpretation of Plaintiff's facts could a reasonable juror consider Damian-Rojas to have been in the course and scope of his employment at the time of the accident.

135

By Plaintiff's own description of the events on the day of the accident, Damian-Rojas was driving the GEC vehicle back from Divi Casino with a friend when he was involved in the accident. *Id.* at ¶ 19. Plaintiff does not allege that Damian-Rojas was conducting any business or performing any work for GEC at Divi from which he was returning at the time of the accident. Instead, Plaintiff's *respondeat superior* theory rests upon the allegation that Damian-Rojas was on call for GEC 24 hours a day, and therefore, at the time of the accident, he was under the control of GEC and serving GEC's benefit. Plaintiff's Opposition, at 9-11. Plaintiff's argument is unpersuasive.

Plaintiff cites non-binding case law, which on the surface appears to support her claim that an employee, on call 24 hours a day, driving an employer's vehicle, is by legal definition acting in the course and scope of employment, regardless of the activity in which the employee is engaged at the time. Plaintiff's Opposition, at 11. However, those cases are distinguishable from the present case and the particulars of those cases further limit their significance and influence.[16]

---

[16] Plaintiff offers *Martin v. Frett*, 17 V.I. 474 (D.V.I. 1980) in support. Although the factual situation of that case is somewhat similar, the District Court denied the employer's motion for summary judgment, finding that a reasonable jury could disbelieve the employer's self-serving affidavit stating that the employee driver was not acting on behalf of the employer at the time of the accident, and could rather find that the employee was actually driving to work or a job site at the time of the accident. As such, a jury could find on the existing record that the employee had been acting in the course and scope of his employment at the time of the accident. *Id.* at 480. The *Martin* Court did not find that an employee's driving the company car, while on call 24 hours a day, meant that any accident in which he may be involved would then be considered to have occurred in the course and scope of his employment. Here, Plaintiff has never alleged from her original Complaint through her Opposition that Damian-Rojas drove to the casino, or was driving back from the casino, for any purpose other than his own recreation. Plaintiff also offers *Evans v. Southwest Gas*, 108 Nev. 1002, 1007, 842 P.2d 719 (1992), which is distinguishable from this case. In *Evans*, the employee driver of the vehicle was on his way home from work at the time of the accident; he "was not permitted to use the vehicle for other than *de minimis* personal use;" and the "vehicle contained valuable Southwest property for which Stokes was responsible." Here, as argued by Plaintiff herself, Damian-Rojas's use of the vehicle was not restricted in any way. There are no allegations that Damian-Rojas was responsible for any tools or other property kept inside the car, and Plaintiff has never alleged that Damian-Rojas was driving to or from work or any work related activity when he was involved in the accident. Plaintiff also offers *McClean v. Chicago Great W. Ry. Co.*, 3 Ill. App. 2d 235, 121 N.E.2d 337, 341 (1954). This 60 year old case is also distinguishable, as the Illinois appellate court emphasized that "it was virtually essential that [the employee driver] have the [employer's] truck and tools no matter where he was." *Id.* Here, the GEC car driven by Damian-Rojas is not alleged to have any significance in terms

■ A case that more closely resembles the one before the Court is *Thurmon v. Sellers*, 62 S.W.3d 145 (Tenn. Ct. App. 2001).[17] In *Thurmon*, the appellate court found that "[i]n the cases dealing with the issue of vicarious liability for an 'on call' employee . . . the underlying principle is that the mere fact that an employee is 'on call' does not automatically give rise to employer liability. Rather, an employee's 'on call' status gives rise to a question of fact as to whether the employee was acting within the scope of his employment at the time of the accident." *Id.* at 153-54, footnotes surveying cases omitted.[18]

No evidence has been put forward that Damian-Rojas was acting on GEC's behalf at any point of the day of the accident or that he was under the "control" of GEC that day.[19] Instead, Plaintiff asks that the Court adopt the novel legal theory that the fact that Damian-Rojas was "on call" and driving GEC's vehicle, standing alone, is enough to saddle GEC with

---

of his capability to do his job for GEC, apart from allowing him the convenience of having reliable transportation to commute to the work sites.

[17] The facts of *Thurmon* were described by the Tennessee appellate court as follows:

The 1995 pickup truck driven by Eddie [employee driver] was leased by Eddie's father, Donald E. Sellers, Sr. (Mr. Sellers) through Mr. Sellers' business, Donnie's Deli and Amoco [employer]. The insurance, gas, and license for the pickup truck was paid through Donnie's Deli and Amoco. Eddie, however, had exclusive control over the pickup truck, using it for errands associated with his business, Cheap Smokes, his father's business, and for personal activities outside of the scope of either of these businesses.

Eddie was a salaried employee of Donnie's Deli and Amoco. He was provided with a cell phone whereby he could be reached in order to run errands for Donnie's Deli and Amoco during the hours of 6:00 a.m. to 11:00 p.m., seven days a week. On the day of the accident, Eddie and Mr. Thurmon were on their way to a golf shop in Memphis so that Mr. Thurmon could look for a set of golf clubs. Eddie was not running any errands for Donnie's Deli and Amoco at the time of the accident; however, Eddie was "on call" and had with him the cell phone provided by Donnie's Deli and Amoco.

*Thurmon v. Sellers*, 62 S.W.3d at 150.

[18] Defendant GEC disputes that Damian-Rojas was "on call" at the time of the accident. GEC's Reply, at 5. However, for the purposes of this Motion for Summary Judgment, the Court accepts Plaintiff's contention that he was "on call" at that time.

[19] Plaintiff's argument that because Damian-Rojas was "on call," that he was "under the control" of GEC, is unpersuasive. *See Thurmon v. Sellers*, 62 S.W.3d at 155 (where the employee/driver had complete control over the use of the employer's vehicle, did not have to ask permission to use the vehicle, was not restricted in any way in his use of the vehicle, and was not restricted in what he could do while "on call," the court found that the employee was not subject to the control of the employer at the time of the accident).

liability for its employee's actions.[20] The Court declines to do so, as to accept Plaintiff's argument "would extend the doctrine of *respondeat superior* to unimaginable and inequitable lengths." *Thurmon*, 62 S.W.3d at 156.

■ Therefore, viewing all reasonable inferences in favor of Plaintiff, the Court finds that no reasonable juror could find that Damian-Rojas was in the course and scope of his employment with GEC at the time of the accident.[21]

### D. Plaintiff's negligence claim under Restatement § 219(2)(b) also fails

Plaintiff argues that even if Damian-Rojas was acting outside the scope of his employment, GEC should be found liable under RESTATEMENT (SECOND) OF AGENCY § 219(2)(b) for acting "negligently or recklessly."[22] Plaintiff's Opposition, at 14. Plaintiff argues that GEC knew or should have known that entrusting Damian-Rojas with its motor vehicle 24 hours a day would present an unreasonable risk of harm to Plaintiff, due to his unfamiliarity with St. Croix roads, his lack of English language skills, his lack of experience driving on the left-hand side of the road and his propensity for drinking and driving. *Id.* at 14.

---

[20] *See Pruden v. United States*, 399 F. Supp. 22, 27 (E.D.N.C. 1973) ("It would be grossly unfair to hold an employer liable for all actions of his employees while they were off duty and on personal missions, even if they were subject to call, unless of course they were called or were performing a specific service for their employer while on call."); *see also Engler v. Gulf Interstate Eng'g, Inc.*, 227 Ariz. 486, 258 P.3d 304, 313 (Ariz. Ct. App. 2011) *aff'd*, 230 Ariz. 55, 280 P.3d 599 (2012); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (employee driver was not acting in furtherance of his employer's business or for the accomplishment of the object for which he was hired, when, at 3:00 a.m., the employee drove employer's truck to a nearby convenience store to purchase his father's cigarettes, fell asleep at the wheel, and hit a motorist's truck head-on, even though the employee had possession of employer's truck with employer's tires on board, had a morning delivery to make, was available via pager 24 hours a day, and was not restricted from using employer's truck for personal business).

[21] The Court notes that questions of whether an employee's action is within the scope of employment is generally a question of fact reserved for the jury. *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d at 309-10. "It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment."

[22] The *Banks* analysis accepting the substance of RESTATEMENT (SECOND) OF AGENCY § 219 as the appropriate common law rule for the Virgin Islands is set forth above.

The Court dismissed Plaintiff's negligent entrustment claim against GEC by Order filed December 27, 2013.[23] In dismissing that count, the Court found that Plaintiff's First Amended Complaint failed to adequately plead, beyond the use of conclusory statements, the second element of the negligent entrustment rule — that GEC entrusted the vehicle "to an unlicensed, incompetent or reckless driver."

Here, the test and the legal standard are different. Plaintiff's negligent entrustment claim was dismissed on the basis of the inadequacy of Plaintiff's pleading, while the Court considers GEC's Motion for Summary Judgment on Plaintiff's negligence claim against it, brought explicitly under Restatement § 219(2)(b), under the summary judgment standard.[24]

Plaintiff argues that GEC can be held liable under Restatement § 219(2)(b), notwithstanding the fact that the employee's alleged conduct was outside the scope of employment, in that a jury could find that GEC itself was negligent or reckless. Plaintiff's Opposition, at 13 (citing *Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502 at *16.

Plaintiff also suggests that the Court should apply the "foreseeability of harm" standard adopted by the Virgin Islands Supreme Court in the premises liability cases of *Machado*[25] and *Perez*,[26] arguing that Plaintiff

---

[23] In addressing Plaintiff's negligent entrustment claim, the Court utilized a four-element rule for establishing a negligent entrustment claim, citing *Canegata v. Randall*, Civ. No. 1991-230, 1993 WL 837906, at *4 (D.V.I. June 16, 1993). Although not spelled out thoroughly in its Order, the Court applied that test which had been previously adopted by Virgin Islands courts, appears to be the majority rule, and was deemed to be the best rule for the Virgin Islands. Any harsher test would unfairly expose employers to liability for the negligent acts of employees entrusted to use employers' vehicles, even where there is no reason to foresee that the employee's use of the vehicle placed the public at risk. At the time of the previous Order, the Supreme Court's *Banks* jurisprudence was still being developed. As the *Banks* line of cases has continued to develop through *Gov't v. Connor*, a *Banks* analysis explicitly considering the three pertinent factors could have been set forth more fully in the prior Order to elucidate the rationale for the Court's adoption of the applicable rule of Virgin Islands law and its determination to dismiss the negligent entrustment claim. Such a more thorough review would not affect the outcome of the Court's prior Order.

[24] Plaintiff quotes *Joseph v. Church of God (Holiness) Acad.*, 47 V.I. 419, 423 (V.I. Super. Ct. 2006) for the proposition that "summary judgment is 'not appropriate in negligence cases . . . .' " Opposition, at 17, however, Plaintiff omits the qualifier "usually," which precedes the word "not" in the original *Joseph* Memorandum Opinion.

[25] *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 386 (V.I. 2014).

[26] *Perez v. Ritz-Carlton, (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013).

has shown that GEC could have foreseen Damian-Rojas's accident and Plaintiff's resulting injuries. Plaintiff's Opposition, at 13-14. Plaintiff provides no explanation why the "foreseeability of harm" test relating to premises liability claims should govern here, as opposed to the test applied by the District Court in *Warner*, which directly applied Restatement § 219(2)(b).[27]

 ██ As to this argument, the Court looks to determine whether a reasonable juror could find that GEC "is negligent with respect to tortious conduct of an employee if it knew or should have known that the conduct was taking place or was likely to take place and failed to stop it." *See Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502 at *16. For the reasons stated below, the Court finds that a reasonable juror, granting all justifiable inferences to the Plaintiff, could not make such a finding.

Plaintiff argues that GEC was negligent because it knew or should have known (1) that Damian-Rojas was unfamiliar with St. Croix roads; (2) that he lacked English language skills; (3) that he lacked experience driving on the left side of the road; and (4) that he was likely to drive while intoxicated. Plaintiff's Opposition, at 14.

The Court finds that Damian-Rojas's alleged "unfamiliarity" with St. Croix's roads has no bearing in this negligence action. No reasonable juror could find that a person driving on an unfamiliar road is likely to cause an accident as a consequence of that unfamiliarity. Similarly, Plaintiff provides no support or rationale for her second allegation, that Damian-Rojas was more likely to get into a car accident due to his alleged lack of English language skills, than he would have been if he were fluent in English.

The record contradicts Plaintiff's third contention that Damian-Rojas lacked experience driving on the left side of the road. Damian-Rojas stated in his 2012 deposition that he lived on St. John from 2004 to 2007, and that he lived on St. John, St. Croix, Puerto Rico, and St. Thomas from 2007 "up till now." Opposition, Statement of Facts, Exhibit 4, Damian-Rojas Deposition, at 4-5. Further, Damian-Rojas obtained a valid Virgin

---

[27] The Virgin Islands Supreme Court clearly limited its holding in *Machado* to premises liability actions, and gave no indication that its holding should have broader application. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. at 399. However, even under a general "foreseeability of harm" test, Plaintiff's case would fail given the complete lack of facts supporting her assertions that GEC should have foreseen the harm to Plaintiff.

Islands driver's license on September 17, 2007, and still maintained the license at the time of his deposition. *Id.* at 12. Damian-Rojas had never been cited for a moving violation before the accident, although he had received five parking tickets in St. Thomas and St. John. *Id.* at 15-16. Damian-Rojas had never been involved in an automobile accident before the one giving rise to this case. *Id.* at 18. Plaintiff has not refuted any of these facts.

Plaintiff's allegation that GEC knew or should have known that Damian-Rojas would drink and drive is just as baseless. There is no evidence that before the day of the accident Damian-Rojas had ever driven while under the influence of intoxicants. And although the Court will accept Plaintiff's contention — for the purposes of this motion only — that Damian-Rojas was driving under the influence at the time of the accident, the only support for this assertion is that he stated in his deposition that he had a single beer at Divi.[28] Because Plaintiff offers no factual support for her claim that GEC was negligent or reckless to entrust Damian-Rojas with its vehicle, or that GEC "knew or should have known" that he would drink and drive or would otherwise drive in a manner that posed any danger to other motorists, this argument must also fail. Accordingly, summary judgment will enter in favor of GEC.

---

[28] Evidence that Damian-Rojas was drunk at the time of the accident is lacking. None of the individuals involved in the accident have alleged that Damian-Rojas appeared to be drunk or smelled of alcohol at the scene of the accident. Although police officers arrived at the scene of the accident, and Damian-Rojas was cited for negligent driving, there is no mention or indication in the accident report that he was driving under the influence. *See* Plaintiff's Opposition, Statement of Facts, Exhibit 6, Accident Report. Plaintiff's entire theory appears to rest upon the fact that Damian-Rojas stated in his deposition that he drank three beers at his home the *night before* the accident, and that he had one beer at the casino on the day of the accident. There are no allegations or facts in the record that GEC was aware of these drinking "episodes." As such, the record does not support the claim that GEC knew or should have known that Damian-Rojas would "likely" drink and drive. Plaintiff's heavy reliance throughout her arguments that GEC didn't check to see if Damian-Rojas had a valid driver's license, didn't check his familiarity with left-side driving, and didn't check his driving record is misplaced. The record reveals that if GEC had made such inquiries, they would have revealed (1) that Damian-Rojas had a valid V.I. driver's license, (2) that he had a clean driving record, and (3) that, as a licensed V.I. driver who had resided for several years in St. John and St. Thomas, he was familiar with driving on the left.

## IV. Plaintiff Aminata Nicholas's Motion to Amend First Amended Complaint

"[A]mendments in the Superior Court are governed by Superior Court Rule 8 . . . ,"[29] *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 255 n.5 (V.I. 2014); *see also Santiago v. Virgin Islands Hous. Auth.*, 57 V.I. 256, 275 (V.I. 2012). Plaintiff seeks to amend her First Amended Complaint "to address certain alleged deficiencies raised by Defendant, GEC, L.L.C., in its motion seeking dismissal of Plaintiff's claim for vicarious liability and to add facts learned during discovery." Motion to Amend, at 1.

Because Superior Court Rule 8 does not identify the legal standard that governs amendments to pleadings, the Court considers case law interpreting Federal Rule of Civil Procedure 15(a)(2), which contains language similar to Superior Court Rule 8. *See Santiago*, 57 V.I. at 275 (citing *H & H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 461 (V.I. 2009)). The Supreme Court of the United States has held that

> [i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

Because Plaintiff's proposed amendments are being made to "address certain alleged deficiencies raised by [GEC]," and because the Court has reviewed GEC's Motion for Summary Judgment under the summary judgment standard, considering the factual record beyond the pleadings, the proposed amendment to Plaintiff's First Amended Complaint is futile.

---

[29] Superior Court Rule 8 states:

The court may amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at the trial. If a party is surprised as a result of such amendment, the court shall adjourn the hearing to some future day, upon such terms as it shall think proper.

On the basis of the foregoing, Plaintiff's Motion to Amend will be denied. An Order consistent with this Memorandum Opinion will enter herewith.